THE STATE *v.* JOHN SMITH.

That an indictment concludes against the form of the *Statute*, instead of *Statute*, is no ground for an arrest of judgment.

(*S.* v. *Moses* 2 Dev. 452; *S.* v. *Tribatt* 10 Ire. 151; *S.* v. *Sandy* 3 Ire. 570 and *S.* v. *Abernathy* Bus. 428, cited and approved.)

INDICTMENT for retailing spirituous liquors, tried before *Thomas, J.*, at Fall Term 1868 of the Superior Court of JONES.

The only question made before this Court was upon the refusal of his Honor below to arrest the judgment, although the indictment concluded against the form of the "Statue" instead of *Statute*.

No counsel for the appellant.
*Attorney General, contra.*

SETTLE, J. The defendant moves to arrest the judgment, for that the indictment concludes against the form of the

"statue," when it should have been, *statute*. What is the effect of substituting the word "statue" for statute, in this connection?

Formerly, it was necessary to set out at length the statute, or statutes, if more than one, upon which an indictment was founded, in order that the party might be informed of the law, against which it was alleged that he had offended. This particularity being attended with much inconvenience, and rendering the proceedings very cumbersome, the conclusion *"contra formam statuti"* or *" contra formam statutorum "* if the indictment was founded upon more than one statute, was received as a sufficient compliance with the law, instead of the long recital. But as many prosecutions still failed, because of the conclusion, *" contra formam statuti,"* when it should have been *" statutorum,"* and *vice versa*, the Courts permitted the device of concluding *" contra formam statut.,"* and would construe the abbreviation to be *statuti* or *statutorum*, in order to fit the case.

It is interesting to trace the changes which have taken place from time to time, in regard to the substance, as well as to the form of indictments. When first introduced, the utmost particularity was required in alleging, according to the truth of the matter, all the facts and circumstances attending the offence. And as the proof had to sustain the allegations in every particular, it was very difficult to obtain conviction,—so much so indeed, that the Courts were compelled, by considerations of public interest, to relax, by construction, the stringency of the rule, which required strict proof of everything, which it was necessary to allege. They would hold, for instance, that an indictment charging that A came to his death, fiom the effects of a mortal wound, upon the right side of the head, was sustained by proof that the mortal wound was in and upon the left side of the body. It is somewhat remarkable, that while the Courts, by construction, dispensed with so much of the proof necessary to sustain an indictment, they at the same time strictly adhered to old precedents, in

regard to the allegations of the bill. They would not hesitate to arrest judgment, for a failure to set out a fact, which if set out, they held, it was not necessary to prove according to the truth of the matter.

It is evident that the Courts have looked with no favor upon technical objections; and the legislature has been moving in the same direction. The current is all one way, sweeping off, by degrees, "informalities and refinements," until, indeed, a plain, intelligible and explicit statement of the charge against the defendant is all that is now required, in any criminal proceeding.

The Act of 1811, Rev. Code, ch. 35, sec. 14, has received the almost universal approbation of the bench and bar. It needs no higher endorsement than that of the late Chief Justice RUFFIN. He says, in *State* v. *Moses*, 2 Dev. 452, " this law was certainly designed to uphold the execution of public justice, by freeing the Courts from those fetters of form, technicality and refinement, which do not concern the substance of the charge, and the proof to support it. "

This act has received a very liberal construction, and its efficacy has reached and healed numerous defects in the substance, as well as in the form of indictment. It is unnecessary to express an opinion, as to whether the Act of 1811, alone, would not cure the defect we are now considering, for the Legislature has by a subsequent act removed all doubt upon the subject.

It seems that there is no particular magic in the conclusion against the form of the " statute, " for other words may be used which might serve the same purpose.

In *State* v. *Tribatt*, 10 Ire. 151, which was an indictment for retailing spirituous liquors without a license, the conclusion was against the form of the " Act of Assembly, " instead of the " statute." Attention is called to the fact, that the title of our Legislature is " The General Assembly," and that there is no such body as "The Assembly;" and yet it was held that the Act of 1811 cured the defect, and that there appeared sufficient upon

· the face of the indictment, to induce the Court to proceed to judgment.

It was repeatedly ruled, however, that it did not embrace the case where an indictment concluded against the form of the " statute, " when it should have been " statutes, " and *vice versa*. *State* v. *Sandy*, 3 Ire. 570, and *State* v. *Abernathy*, Bus. 428.

In both of these cases, attention is called to the statute of 7 Geo. 4, ch. 64, sec. 20; and it is intimated that a similar reform would be beneficial in this State.

Shortly after Abernathy's case, we find the Legislature enacting that, " no judgment upon any indictment for felony or misdemeanor, whether after verdict, or by confession, or otherwise, shall be stayed or reversed for the want of the averment of any matter unnecessary to be proved, nor for the omission of the words " with force and arms, " nor for the insertion of the words " as appears by the record," or of the words " against the form of the statutes " instead of the words " against the form of the statute, " or *vice versa;* nor for omitting to state the times at which the offence was committed, in any case where time is not of the essence of the offence, nor for stating the time imperfectly, nor for stating the offence to have been committed on a day subsequent to the finding of the indictment, or on an impossible day, or on a day that never happened; nor for the want of a proper and perfect venue, when the Court shall appear by the indictment to have had jurisdiction of the offence. "

The Legislature, by this Act, evidently intended to cure the defects therein named, and all others of a similar character.

It did not mean simply to abolish the distinction between the singular and plural numbers, and to say that it must be either the word " statute " or " statutes, " and that no other word or words could supply their places; but it meant to say that the Courts should disregard all objections of that character, and proceed to judgment. There is no such word as " statue " in connection with legal proceedings, and the defendant could not have been misled by its use. He must have known that it was intended for the word statute, and he was

.as fully informed of the nature of the charges against him, and of the law upon which it was founded, as we would have been, had the letter " t " not been omitted in the word statute.

Giving to the Acts of 1811 and 1854 the same liberal interpretation, which they have always received, we have no hesitation in declaring that they fully meet the case before us, and cure the defect, upon which it is sought to arrest the judgment.  There is no error.  This will be certified, &c.

PER CURIAM.                                             No error.