STATE v. J. B. BARNES.

(Decided March 22, 1898.)

*Indictment for Assault with Intent to Commit Rape—*
*Indictment, Sufficiency of—Motion to Arrest—Verdict.*

1. The Act of 1811 (*Code*, Section 1183) was intended to uphold the execution of public justice by freeing the Courts from the fetters of form, technicality and refinement which do not concern the substance of the charge and the proof to support it.

2. An indictment charging that defendant "unlawfully and feloniously did make an assault, and her, the said C., then and there forcibly, violently and against her will, then and there feloniously to abuse, ravish and carnally know" constitutes a plain charge of assault with intent to rape; and where defendant asks for instructions to the jury pertinent to that crime and makes no objection to the evidence or the charge of the Court thereon, the omission of the words "with intent" from the indictment is not ground for arrest of judgment, since Section 1183 of *The Code* forbids arrest of judgment by "reason of any informality or refinement."

3. While Ch. 68, Acts of 1885, permits a verdict for an assault when it is embraced in the charge of a greater offense, as rape or other felony, a verdict simply of "guilty", and not specifying a lower offense, is a verdict of guilty of the offense charged in the indictment.

FAIRCLOTH, C. J., dissents.

INDICTMENT for assault with intent to commit rape tried before *Timberlake, J*, and a jury, at Fall Term, 1897, of NASH Superior Court.

The defendant was indicted, in the following bill, for an assault to commit rape:   " The jurors for the State, upon their oath, present that J. B. Barnes, late of the County of Nash, on the 6th day of October, in the year of our Lord one thousand eight hundred and ninety-seven, with force and arms, at and in the County aforesaid in and upon one Cora Yarboro, then and there being, unlawfully and feloniously did make an assault and her, the said Cora Yarboro, then and there forcibly, violently, and against her will, then and there felon-

iously to abuse, ravish and carnally know; and other wrongs to the said Cora Yarboro then and there did, against the form of the statute in such case made and provided, and against the peace and dignity of the State."

The prosecutrix testified that she was living with the defendant and his wife, who stood to her in *loco parentis*, her father and mother being dead; that the defendant took her to church in the buggy, and returning took an unfrequented road on the excuse that it was not so dusty; that when they got to an unfrequented spot he attempted to kiss her and put his arm around her, she struggled from him and got out of the buggy; he got out, caught her, threw her down, threatened to kill her if she did not yield; that she screamed and tried to get away, and her dress was torn, but he got on her, when two men, Harris and Epps, rode up, whereupon he desisted; that she refused to go with defendant but got in the buggy with Harris, with whom she went home; that the next day (Monday) she took out the warrant; that she has now no home.

Harris testified that he and Epps were in their buggy and when in about 40 or 50 yards saw a man and woman tussling and Epps said to him "Some one is fighting." They trotted on and when in about 15 or 20 yards saw a lady's limbs fly up and her underclothing showing; that when they got to Barnes he was on top of the prosecutrix whom he had down on the ground; he got up and the prosecutrix also, and she applied to him (Harris) to ride in his buggy; then defendant said she should go in his buggy, the prosecutrix said "she would die first." Barnes plead with her in vain to go home with him, and again at the stock-law gate Barnes said, "Miss Cora get in my buggy and let us

stop this thing." She said she would never do it, and that Barnes and his wife had promised he would act as a father to her. He said he would be a father to her now if she would get in the buggy, and asked "What can I say to my wife?" He renewed the effort two or three times but she refused and went on with Harris to his house. After supper Barnes came over with his wife, who went in to see the prosecutrix, that the defendant said to him that if the prosecutrix did not stop the matter "it would ruin him." "He said that he tried to kiss her and when his passions got up he could not control himself; that if we (Harris and Epps) had been five or six minutes later he would have done what he wanted to do. He said that Epps had sworn not to tell and he wanted me to do the same thing." He said "Mr. Harris, I confess I am guilty, but when my passions get up, I cannot control myself." Epps testified to being with Harris on that occasion, their finding the defendant in that position and his efforts to get the prosecutrix in his buggy and her refusal. The evidence was more in detail but this is the substance of it. The defendant neither testified himself nor introduced any evidence in defence, nor to attack the character of the witnesses for the prosecution.

The court instructed the jury fully and correctly as to an assault with intent to commit rape, and then gave the following special instructions asked for by the defendant: "Before the jury can convict, they must be satisfied the defendant intended to gratify his passions on the person of the prosecutrix at all events and notwithstanding any resistance she might make. If the jury believe the prosecutrix made no outcry, that she was not bruised, that her clothes were not torn, that her hat was not off, these are all circumstances which the

STATE v. BARNES.

jury may consider in determining whether the prosecu-trix resisted or consented." The court closed the charge as follows: "If you shall believe that defendant put his hands on the prosecutrix against her will and con-sent and tried to kiss her, but did not intend to ravish her and carnally know her at all hazards and despite any resistance on her part, the defendant would not be guilty of assault with intent to commit rape, but would be guilty of a simple assault only."

The defendant was convicted and sentenced to imprisonment for seven years in the State Penitentiary, and appealed.

*Mr. Zeb V. Walser, Attorney General*, for the State.
*Messrs. Aycock & Daniels, Battle & Thorne* and *J. E. Woodard*, for defendant (appellant).

CLARK, J., (after stating the facts as above):

There is no exception to the evidence and none to the charge. After verdict the defendant moved in arrest of judgment on the ground that the words "with intent" were left out of the indictment. He cannot say that he has been in the slightest degree misled or prejudiced in his defence thereby. If he had thought the indictment ambiguous as to the offence with which he was charged, he should have moved to quash for the informality and the solicitor would doubtless have accommodated him by sending a new bill. But he understood the charge per-fectly by asking instruction upon the offence of assault with intent to commit rape, which was given; he heard the Judge's charge fully and explicitly upon that offence and made no exception thereto. He sat in the dock and heard the overwhelming evidence that he had assaulted the prosecutrix with intent to commit rape

upon her, and made no exception that he was not charged in the indictment with that offence; he heard his admissions of guilt given in evidence and his statement that if the witnesses had been five or six minutes later he would have succeeded,— a crime which would have put a halter around his neck; he offered no evidence to contradict the evidence given of his acts and of his admission of guilt.

There could not be found a case more strongly justifying the wisdom of the statute (*Code*, Section 1183) which forbids judgment to be arrested "by reason of any informality or refinement." In *State v. Moses*, 13 N. C., 452 (at page 464) Judge Ruffin says of this statute: "This law was certainly designed to uphold the execution of public justice by freeing the courts from those fetters of *form, technicality* and *refinement* which do not concern the substance of the charge and the proof to support it. Many sages of the law had before called nice objections of this sort a disease of the law and a reproach to the bench, and lamented that they were bound down to strict and precise precedence. . . . We think the legislature meant to disallow the whole of them and only require the *substance*; that is a direct averment of *those facts* and *circumstances* which *constitute* the crime to be set forth." In *State v. Smith*, 63 N. C., 234, the court say: "The Act of 1811, (now *Code* Section 1183) has the almost universal approval of the bench and bar. It needs no higher endorsement than that of the late Chief Justice Ruffin in *State v. Moses*, (cited *supra*) . . . . The Act has received a very liberal construction and its efficacy has reached and healed numerous defects in the substance as well as the form of indictments. . . . It is evident that the courts have looked with no favor on technical objections, and the

legislature has been moving in the same direction. The current is all one way, sweeping off by degrees 'informalities and refinements' until indeed a plain, intelligible and explicit charge is all ·that is now required." That this was a plain and intelligible charge is shown by the fact that the defendant did understand it as a charge for an assault with intent to commit rape, he heard evidence given to prove that charge, and the court instructed upon it, without objection, and himself asked an instruction upon that offence, which was given. He was tried for that offence and he made no objection. In *State* v. *Parker*, 81 N. C., 531, Ashe, J., says: "Ever since 1811, it has been the evident tendency of our courts as well as our law-makers to strip criminal actions of the many refinements and useless technicalities with which they have been fettered by the common law. the adherence to which often resulted in obstruction of justice and the escape of malefactors from merited punishment." To same purport are numerous other cases, some of which are cited and reviewed in *State* v. *Hester* at this term.

The defendant earnestly insists that the omission of the words "with intent" are fatal and that though in fact he did understand with what offence he was charged, he ought not to be taken to have comprehended it. The words "feloniously," "burglariously" and "malice aforethought" have been held indispensable because they have no synonyms and their place cannot be supplied, and hence are "sacramental words," as they have been styled. *State* v. *Arnold*, 107 N. C., 861. It is not so with the words "with intent" in an indictment for an assault with intent to commit rape, (*State* v. *Tom*, 47 N. C., 414,) in which it is said that other words (in that case the word "intention" was used) are sufficient

STATE *v.* BARNES.

if they make the charge of a felonious assault "with the design or purpose to commit a rape." In the present case the allegation is that the defendant "unlawfully and feloniously" assaulted Cora Yarboro, "then and there forcibly, violently and against her will then and there feloniously to abuse, ravish and carnally know." It would be the height of "refinement" to say that this does not charge that he assaulted her with intent to rape her. To say that "A feloniously assaulted B to kill him" means that he made the assault with intent to kill him. So here, the charge that the defendant "feloniously assaulted" the prosecutrix "forcibly and violently and against her will then and there feloniously to abuse, ravish and carnally know" means, and can mean, only one thing—that he assaulted her with intent to ravish her. *State* v. *Martin*, 14 N. C., 329 holds that a charge of an *attempt* to ravish is not sufficient because *attempt* is not the synonym of *intent*. This is approved in *State* v. *Goldston*, 103 N. C., 323 on the ground that allegation of an attempt is the allegation of an act which may be evidence of intent but is not an allegation itself of intent. That decision, however, further says that the word "intent" is not indispensable, other words may suffice, and those used in the present case fully express the charge of an assault with the purpose, intent or design to ravish. In *State* v. *Powell*, 106 N. C., 635, relied on by the defendant, the material words "forcibly and against her will" were omitted and "no words of equivalent import were used."

We do not, however, approve of the departure here made from the customary form of words used for charging this offence, though we hold that it does not vitiate the bill. It is passing strange that any prosecuting officer should by negligence or inadvertence depart,

STATE *v.* BARNES.

especially in so important a case, from the forms so long used, and run the risk of a grave miscarriage of justice and the throwing a heavy bill of cost upon the public by such carelessness. The accustomed and approved forms are accessible and should be followed by solicitors, till (as with murder, perjury and in some other instances) they are modified and simplified by statute. *The Code*, Section 1183, was enacted to prevent miscarriages of justice, but not to encourage prosecuting officers to try experiments with new forms, or to excuse them from the duty of ascertaining and following those which have been approved by long user or by statute. The object of the statute in disregarding refinements and informalities is to secure trials upon the merits, and solicitors will best serve that end by observing approved forms so as not to raise unnecessary questions as to what are refinements and informalities and what are indispensable allegations.

There is only one count in the indictment, and it is unnecessary to notice the authorities cited as to general verdicts rendered on a bill charging offences punishable differently.

While the statute (Acts 1885, Chapter 68) permits a verdict for an assault when it is embraced in the charge of a greater offence, as rape or other felony, a verdict simply of guilty and not specifying a lower offence is a verdict of guilty of the offence charged in the indictment.                                    No error.

FAIRCLOTH, C. J., dissents.