STATE v. R. L. CARPENTER AND THOMAS PROPST.

(Filed 2 May, 1917.)

**1. Intoxicating Liquor—Statutes—Separate Offenses—Criminal Law.**

Section 2, chapter 97, Public Laws 1915, creates two offenses, one for receiving more than one quart of spirituous liquor at one time or at one delivery, and the other for receiving more than one quart in one package; and as to each the statute is constitutional and valid.

**2. Indictment—Criminal Law—Constitutional Law—Judgment—Statutes.**

Our Constitution, Art. I, secs. 11 and 12, requires that the accused be informed of the charge against him, but not in any special form or particular words, except it must be by presentment or indictment; and a motion in arrest of judgment will be denied if the charge in the indictment is sufficient for the court to proceed to judgment. Revisal, sec. 3254.

**3. Same—Motion in Arrest—Intoxicating Liquor.**

Where the indictment charges a violation of the prohibition law in receiving a greater quantity of spirituous liquor in one package than one quart at one time, within the State, it is sufficient to sustain a judgment of guilty under the statute, Public Laws 1915, ch. 97, sec. 2, and a motion in arrest thereof will be denied.

**4. Statutes—Interpretation—Intent—Language Used.**

Where a statute is clearly expressed, and is without doubtful meaning, an interpretation beyond the meaning of the expressions used therein is not permissible.

CRIMINAL ACTION, tried before *Justice, J.,* at August Term, 1916, of GASTON.

The defendants were indicted for receiving more than 1 quart of spirituous liquor, under Public Laws 1915, ch. 97, sec. 2, which is as follows: "That it shall be unlawful for any person, firm, or corporation at any one time or in any one package to receive at a point within the State of North Carolina for his or her use or for the use of any person, firm, or corporation, or for any other purpose, any spirituous or vinous liquors or intoxicating bitters in a quantity greater than 1 quart, or any malt liquors in a quantity greater than 5 gallons." They were convicted and appealed.

*Attorney-General Manning and Assistant Attorney-General Sykes for the State.*
*S. J. Durham for defendants.*

WALKER, J. The verdict is well supported by the evidence, even the defendants' own testimony. They admitted that they had bought a

glass jug containing 1 gallon of whiskey, and also 4 quarts in separate bottles, from a man who was driving an automobile about 3 miles from Cherryville in Gaston County, and that it was delivered to and received by them. They put it in their buggy and it was found in their possession by the officers, who were searching for them, having received information that they had the liquor. The defendants contend, though, "that the context of the act indicates that receiving as an aid to the unlawful transportation of liquor is the evil which the Legislature intended to prohibit." But the first section of the chapter provides that "It shall be unlawful for any one to transport, carry, or deliver, in any manner or by any means whatsoever, for hire or otherwise, in any one package, or at any one time, *from a point within or without the State,* to any other person, firm, or corporation *in this State,* any spirituous liquors . . . in a quantity greater than 1 quart . . . and it shall be unlawful for any spirituous liquors . . . so shipped, transported, carried, or delivered in any one package to be contained in more than one receptacle." (Italics ours.) It will be observed in reading the statute, that in section 2 there is no reference to section 1, and it is contended, therefore, that it creates a separate and distinct offense; but whether this be true or not, the receiving of liquor under the circumstances stated in the indictment and detailed in the proof would be an aid to the unlawful transportation, carriage, or delivery of the liquor. We do not perceive how the statute can be unconstitutional and void, even if the receipt of the liquor is "incidental to a purchase of it," where the sale was an unlawful one, as it was in this instance. The case falls within the plain and unmistakable terms of the statute. It is not necessary that the receipt should have been from one who had transported, carried, or delivered the liquor in *interstate* commerce, because the statute clearly embraces a carriage and delivery when they are acts done wholly within the State. It would seem that the person in the automobile, from whom the defendants purchased the liquor, was an itinerant dealer, acting in open violation of the law. While this does not play any very important part in the determination of the case as to its legal aspects, it discloses an evil against which the Legislature was evidently providing.

We have often held that a statute, even one of a criminal nature, when ambiguous, should receive a reasonable construction, so as to ascertain the intention of its framers and to suppress the mischief against which it is directed. When the meaning is plain, as in this case, there is no room for construction. We merely interpret it as it is written and clearly expressed.

The Court recently said in *Caminetti v. U. S.,* 37 C. Rep. 193: "It is elementary that the meaning of a statute must, in the first instance, be

sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the law-making body which passed it, the sole function of the courts is to enforce it according to its terms," citing numerous cases. And again: "Where the language is plain and admits of no more than one meaning, the duty of interpretation does not arise, and the rules which are to aid doubtful meanings need no discussion. *Hamilton v. Rathbone,* 175 U. S., 414,- 421." There is no ambiguity in the terms of this act.

If the proof had shown that defendants had merely bought and *received* the 4 quarts, each quart in a separate bottle, for themselves and others, the result might have been different (*S. v. Little,* 171 N. C., 805) though this question is not before us. It is here charged substantially that defendants received one package containing more than 1 quart and at one time. It was not necessary that both of the latter elements should have coexisted, as it was sufficient that they received more than 1 quart at one time, or in one package, for themselves, as there are two offenses created by section 2, one for receiving more than 1 quart at one time, or at one delivery, and the other for receiving more than 1 quart in one package, as the language is virtually the same as that in the first section, which has been held to create two offenses as to transporting, carrying, or delivering liquor. *S. v. Little, supra.*

There was an objection to the form of the bill, but we think, as against a motion to arrest the judgment, it is sufficiently definite to inform the defendants of the charge preferred against them. By fair and reasonable intendment, it charged a receipt of more than 1 quart of liquor in one package—that is, 1 solid gallon of liquor, not 4 quarts or 8 points.

We have held that in order to sustain a motion in arrest of judgment, after verdict, for defects in the indictment, it must appear that the bill is so defective that a judgment cannot be pronounced upon a verdict thereunder. *S. v. Moses,* 13 N. C., 452; *S. v. Smith,* 63 N. C., 234; *S. v. Francis,* 157 N. C., 612; *S. v. Barnes,* 122 N. C., 1031; *S. v. Ratcliff,* 170 N. C., 707. The act of 1811, ch. 809 (Rev., sec. 3254), provides: "Every criminal proceeding by warrant, indictment, information, or impeachment shall be sufficient in form for all intents and purposes if it express the charge against the defendant in a plain, intelligible, and explicit manner; and the same shall not be quashed, nor the judgment thereon stayed, by reason of any informality or refinement, if in the bill or proceeding sufficient matter appears to enable the court to proceed to judgment." This Court construed the act of 1811 in *S. v. Moses, supra,* where *Judge Ruffin* said: "This law was certainly designed to uphold the execution of public justice by freeing the courts from those fetters of form, technicality, and refinement which do

49—173

not concern the substance of the charge, and the proof to support it. Many of the sages of the law had before called nice objections of this sort a disease of law, and a reproach to the bench, and lamented that they were bound down to strict and precise precedents, neither more brief, plain, nor perspicuous than that which they were constrained to reject. In all indictments, as especially those for felonies, exceptions extremely refined, and often going to form only, have been, though reluctantly, entertained. We think the Legislature meant to disallow the whole of them, and only require the substance, that is, a direct averment of those facts and circumstances which constitute the crime, to be set forth. It is to be remarked that the act directs the court to proceed to judgment without regard to two things—the one, form, the other, refinement. The first can embrace, perhaps, only the mode of stating the fact. If the fact be one essentially entering into a crime, it must be set forth; but it need not be set forth in any particular words, if other words can be found which will convey the whole requisite legal idea. Pleaders are much to be commended for pursuing the ancient, settled, approved precedents. They are the best evidence of the law itself; and it is a becoming modesty in us, the emblem of merit, to evince a marked veneration for the sages who have preceded us. But it has pleased the Legislature not to require, as a matter of duty, in all cases, what is certainly a matter of prudence and propriety. Allowing it to be necessary that a certain fact shall be stated, they have dispensed with the necessity for stating it in a certain manner." And in *S. v. Smith, supra,* Judge Settle said: "It is evident that the courts have looked with no favor upon technical objections; and the Legislature has been moving in the same direction. The current is all one way, sweeping off, by degrees, 'informalities and refinements,' until, indeed, a plain, intelligible, and explicit statement of the charge against the defendant is all that is now required in any criminal proceeding. The act of 1811, Rev. Code, ch. 35, sec. 14, has received the almost universal approbation of the bench and bar. It needs no higher indorsement than that of the late *Chief Justice Ruffin.* He says, in *S. v. Moses,* 2 Dev., 452: 'This law was certainly designed to uphold the execution of public justice by freeing the courts of those fetters of form, technicality, and refinement, which do not concern the substance of the charge and the proof to support it.' This act has received a very liberal construction, and its efficacy has reached and healed numerous defects in the substance as well as in the form of indictment." *Judge Ashe* in *S. v. Parker,* 81 N. C., 531, expresses the following views: "Ever since 1811 it has been the evident tendency of our courts as well as our law-makers to strip criminal actions of the many refinements and useless technicalities with

which they have been fettered by the common law, the adherence to which often resulted in obstruction of justice and the escape of male-factors from merited punishment."

These cases, and there are a number of others, show conclusively the strong trend towards giving the act of 1811 a liberal construction with a view of facilitating the administration of criminal justice without, of course, impairing the just rights of the accused under the Constitution, which only requires that he be informed of the charge against him, but not in any special form or particular words, except that it must be by presentment or indictment. Const., Art. I, secs. 11 and 12.

In *S. v. Francis, supra,* which was an indictment for manufacturing liquor in violation of the statute, *Justice Brown* said, referring gen-erally to the statute: "Had the defendant moved to quash this bill or for a bill of particulars to supply him with any needed information, it is probable that one motion or the other would have been allowed. The defendant has not been taken at any disadvantage, for he allowed the trial to proceed and attacked the bill only after he had been convicted. To arrest the judgment it must appear that the bill is so defective that judgment cannot be pronounced upon it. . . . The bill, while defect-ive in form, is sufficient to sustain the judgment of the court."

It is usually safe to follow the language of a statute when drawing an indictment upon it, as a departure from it may raise a doubt as to the sufficiency of the allegations. *S. v. Hall,* 93 N. C., 571; *S. v. Bryant,* 111 N. C., 693. "This is laid down by all the authorities as the true and safe rule." *Ashe, J.,* in *S. v. George,* 93 N. C., 567. Sometimes the bill is required to be drawn according to the words of the act defining the offense. *S. v. Deal,* 92 N. C., 802. But we do not see how the defend-ant could have failed to understand the particular accusation against him in this case, as the bill of indictment describes but one offense, and substantially alleges that of receiving 1 gallon of liquor and at a stated time. It is sufficient, even within the rule laid down in *S. v. Lewis,* 93 N. C., 581.

There can be no question as to the constitutionality of this statute. It was recognized in *S. v. Little, supra,* and the cases recently decided in the highest Federal Court affirm the validity of similar enactments. *J. C. Distilling Co. v. W. M. Railway Co. and West Virginia,* and *Same v. Am. Express Co.* (8 January, 1917). The case of *S. v. Burchfield,* 149 N. C., 537, will be found to have some bearing upon the question. *S. v. Williams,* 146 N. C., 618, is not in point.

It must be remembered that defendants received this liquor from an unlicensed dealer or an unlawful vender of it.

No error.