STATE OF NORTH CAROLINA v. JAMES ROBERT TAYLOR

No. 34

(Filed 14 January 1972)

1. **Indictment and Warrant § 9— sufficiency of indictment**

    The indictment must allege all of the essential elements of the crime sought to be charged, and a bill is sufficient if it charges the offense in a plain, intelligible and explicit manner, with averments sufficient to enable the court to proceed to judgment and to bar a subsequent prosecution for the same offense. G.S. 15-153.

2. **Indictment and Warrant § 9— superfluous allegations**

    Allegations beyond the essential elements of the crime sought to be charged are irrelevant and may be treated as surplusage.

3. **Indictment and Warrant § 9— form of indictment**

    Prosecuting officers should ordinarily follow approved forms in drafting bills of indictment so as to avoid raising questions unnecessarily as to what are refinements and what are essential allegations.

4. **Rape § 3— indictment for rape — superfluous allegations**

    The trial court did not err in the refusal to strike from an indictment for rape the words "not having the fear of God before his eyes, but being moved and seduced by the instigation of the devil," and the word "wickedly," the court having properly regarded such words as mere surplusage.

5. **Criminal Law § 98— refusal to sequester witnesses**

    The trial court in this rape prosecution did not abuse its discretion in refusing to sequester the State's two chief witnesses—the ten-year-old victim and her eight-year-old brother.

6. **Criminal Law § 66— findings as to lineup procedure — conclusiveness on appeal**

    Trial court's findings of fact as to lineup procedure are conclusive when supported by competent evidence in the record.

7. **Criminal Law § 66— lineup identification — defendant's shirt darker than shirts of other participants**

    Lineup was not rendered unnecessarily suggestive so as to violate due process by the fact that defendant was wearing a dark colored shirt and the other five lineup participants were wearing lighter colored

State v. Taylor

shirts, the clothing worn by all six lineup participants having been chosen by the subjects themselves and the difference in the shades of color not being attributable to the officers.

**8. Criminal Law § 66— lineup identification procedure**

The total circumstances revealed by the record show that the rules established for in-custody lineup identification were substantially followed for a lineup in which a ten-year-old rape victim and her eight-year-old brother identified defendant as the victim's assailant.

**9. Criminal Law § 66— illegal lineup — in-court identifications — independent origin**

Even if the lineup identifications of defendant were illegal, there was ample evidence to support the court's finding that the in-court identifications of defendant by the rape victim and her brother were of independent origin and therefore competent, where the evidence showed that the victim and her brother had ample opportunity to see defendant at a Tastee-Freez and to observe him as he walked and talked with them prior to the assault, and that the victim recognized defendant on a public street the first time she saw him following the assault and prior to the time the lineup was held.

**10. Criminal Law § 167— harmless constitutional error**

Some constitutional errors are deemed harmless in the setting of a particular case, not requiring the automatic reversal of a conviction, where the appellate court can declare a belief that it was harmless beyond a reasonable doubt.

**11. Criminal Error § 66— admission of evidence concerning lineup — harmless error**

In this prosecution for rape, there is no reasonable possibility that a pretrial lineup could have led to a mistaken identification or contributed to defendant's conviction, and admission of evidence concerning the lineup was harmless, where the victim had identified defendant on a public street only two or three hours prior to the lineup.

**12. Criminal Law § 77— denial of guilt — self-serving declaration**

Evidence sought to be elicited on cross-examination of a State's witness that defendant immediately denied his guilt when told he was under arrest for rape was properly excluded as a self-serving declaration.

APPEAL by defendant from judgment of *Hall, J.,* 14 September 1970 Regular Session, WAKE Superior Court.

Defendant was tried upon the following bill of indictment:

"THE JURORS FOR THE STATE UPON THEIR OATH PRESENT, That James Robert Taylor, late of the County of Wake, on the 29th day of May, 1970, with force and arms, at and in the County aforesaid, not having the fear of God

State v. Taylor

before his eyes, but being moved and seduced by the instiga-
tion of the devil, in and upon one Renee Veronica Overby,
a female child under the age of 12 years, to wit: of the age
of 10 years and upwards, in the peace of God and the State,
then and there feloniously did make an assault and her
the said Renee Veronica Overby then and there wickedly,
unlawfully and feloniously did carnally know and abuse,
against the form of the statute in such case made and pro-
vided and against the peace and dignity of the State."

The State's evidence tends to show that between 10:45 and
11:00 p.m. on Friday night, 29 May 1970, Renee Overby, age
ten, and her brother Daniel Overby, age eight, were sent by
their mother to a place called Tastee-Freez to buy drinks and
sandwiches. Several customers were ahead of them, and the
children had to wait in line to be served. The place was well
lighted and while waiting they saw a man buy matches from
a boy and heard him ask the boy for some ice. The man was
not in the line to be served.

When the children left the sandwich place the man told
them he would "walk them home" and Renee replied they could
go by themselves. The man walked along with them anyway.
When they reached the First Baptist Church on South Fayette-
ville Street below Memorial Auditorium in Raleigh, he told
Renee to follow him or he would shoot her. He said he had a
gun. They followed him across the street and into the woods.
There he placed a piece of cardboard on the ground and told
Renee to lie down upon it. He then proceeded to rape the child
while her brother Daniel sat on the ground nearby as he had
been commanded to do.

After completion of the rape Renee struck the man with
her shoe and both the children ran toward home. They met their
mother who was on the sidewalk looking for them. Renee had
one sandal and her panties in her hand and was covered with
blood. She told her mother what had happened and was taken
to the hospital where she remained until the following day.

On Monday, June 2nd, Mrs. Overby went uptown with
Renee. The car in which they were riding was parked on East
Martin Street in front of Carter's Furniture Store. Mrs. Overby
went to the bank to cash a check, and upon returning to the car
Renee said to her: "Mommie, Mommie, there is the man, that's

the man that did that to me, the one in the green in the middle." Renee was referring to defendant who was walking on the street with two other men. Mrs. Overby left the car and followed defendant for several blocks, then called the police and he was taken into custody.

Both Renee and her little brother Daniel Overby identified defendant in a lineup and later from the witness stand in court.

Defendant offered no evidence. The jury found him guilty of rape as charged and recommended life imprisonment. Judgment was pronounced accordingly, and defendant appealed to the Court of Appeals. The case was transferred to the Supreme Court for initial appellate review under the general transfer order dated 31 July 1970. Errors assigned will be noted in the opinion.

*William T. McCuiston, Attorney for defendant appellant.*

*Robert Morgan, Attorney General, and Ralph Moody, Deputy Attorney General, for the State of North Carolina.*

HUSKINS, Justice.

[4]  Before pleading to the charge defendant moved to quash certain language in the bill of indictment, specifically the words "not having the fear of God before his eyes, but being moved and seduced by the instigation of the devil"; and also the word "wickedly" near the end of the bill. Denial of his motion constitutes defendant's first assignment of error.

[1, 2]  An indictment is "a written accusation of a crime drawn up by the public prosecuting attorney and submitted to the grand jury, and by them found and presented on oath or affirmation as a true bill." *State v. Thomas,* 236 N.C. 454, 73 S.E. 2d 283 (1952). The indictment *must* allege all of the essential elements of the crime sought to be charged, *State v. Courtney,* 248 N.C. 447, 103 S.E. 2d 861 (1958) ; and a bill is sufficient if it charges the offense in a plain, intelligible and explicit manner, with averments sufficient to enable the court to proceed to judgment and to bar a subsequent prosecution for the same offense. G.S. 15-153; *State v. Anderson,* 259 N.C. 499, 130 S.E. 2d 857 (1963). Allegations beyond the essential elements of the crime sought to be charged are irrelevant and may be treated as surplusage. The use of superfluous words should be disregarded. *State v. Piner,* 141 N.C. 760, 53 S.E. 305 (1906).

**[3]** While G.S. 15-153 was designed to free the courts from the fetters of form, technicality and refinement not concerned with the substance of the charge, *State v. Barnes,* 122 N.C. 1031, 29 S.E. 381 (1898), prosecuting officers should ordinarily follow approved forms in drafting bills of indictment so as to avoid raising questions unnecessarily as to what are refinements and what are essential allegations. *State v. Hammonds,* 241 N.C. 226, 85 S.E. 2d 133 (1954).

**[4]** It is obvious that the solicitor who drafted the bill in this case was merely following the language of an old, approved form. "In the old indictment for murder, the depth, width and nature of wound, date of death and divers other matters were charged, including the 'instigation of the devil,' but were not required to be proven." *State v. Wynne,* 151 N.C. 644, 65 S.E. 459 (1909). The words embraced in defendant's motion to quash were surplusage and properly regarded as such by the trial court. Defendant's contention that the surplusage was so inflammatory and so inherently prejudicial as to violate his constitutional rights to a fair trial is an unwarranted exaggeration. While such surplusage might well have been stricken, failure to do so was not prejudicial error. It seems to us that the essential averments of this bill are far more inflammatory than the surplusage of which defendant complains. His apprehensions of prejudice on this account are unsound. This assignment is overruled.

Contending that identification of defendant as the culprit who assaulted and raped Renee Overby rested solely upon the testimony of two minor children, defendant moved to sequester the children and remove them from the courtroom except when each was testifying. Denial of his motion for sequestration is the basis for defendant's second assignment of error.

**[5]** Sequestration of witnessses is discretionary with the trial judge and may not be claimed as a matter of right. Stansbury, N. C. Evidence § 20 (2d Ed., 1963). Refusal to sequester the State's witness in a criminal case is not reviewable unless an abuse of discretion is shown. *State v. Clayton,* 272 N.C. 377, 158 S.E. 2d 557 (1968). This accords with the great majority of jurisdictions. 53 Am. Jur., Trial § 31 (1945). The record before us discloses no reason for sequestration of the State's two minor witnesses—the victim and her small brother—and no abuse of discretion has been shown. That ends the matter.

*State v. Fox,* 277 N.C. 1, 175 S.E. 2d 561 (1970) ; *State v. Barrow,* 276 N.C. 381, 172 S.E. 2d 512 (1970). This assignment has no merit.

Defendant's third, fourth and fifth assignments of error pertain to defendant's identification in and out of court and in a pretrial lineup. They will be considered *en masse.*

Defendant was arrested at 4:30 p.m. on 2 June 1970 and placed in a lineup at 6:30 p.m. on the same date. Prior to the lineup he was advised of his constitutional rights, including the right to have counsel present at the lineup. Defendant stated he was willing to stand in a lineup without a lawyer, that "the people didn't know him anyway." He and five other inmates of the jail were thereupon placed in a lineup and viewed through a two-way mirror by Renee and Daniel Overby, each child viewing the lineup separately. Each subject in the lineup was holding a number. The defendant was holding Number 3, and Renee Overby and Daniel Overby each wrote down Number 3. The lineup participants were then moved into different positions in the line and given different numbers. Each child then separately viewed the lineup again, and each wrote down Number 6, the number assigned to the defendant in the second lineup. Defendant had on a dark colored green shirt and light green pants, the same clothes he was wearing on the street when recognized by Renee Overby. All the other subjects in the lineup had on lighter colored shirts, two of which were green, and trousers of varying shades. Defendant's darker colored shirt, in contrast to the lighter colored shirts worn by the other subjects, was the only mark of identification peculiar to him alone.

Upon timely objection to evidence concerning the lineup, the court conducted a voir dire in the absence of the jury. Following the State's evidence on voir dire—defendant offered none—the court found: (1) that prior to any lineup defendant was fully advised of his constitutional rights, including the right to have counsel present; (2) that defendant stated "he wanted to stand in the lineup, that the people didn't know him anyway," that he would be glad to stand in the lineup without an attorney being present; (3) that defendant knowingly and intelligently waived his right to the presence of counsel; (4) that the lineup procedure was fairly and properly conducted; (5) that evidence of defendant's identification at the lineup was competent and admissible; and (6) that the in-court iden-

tification of defendant was based upon observation of him at the time of the rape and not influenced by the later lineup procedure.

Defendant contends the lineup procedure, as outlined above, was so unnecessarily suggestive and so conducive to irreparable mistaken identification as to constitute a denial of due process in violation of the Fourteenth Amendment.

[6, 7] There is competent evidence in the record to support the findings of the trial judge. The findings are therefore conclusive. "Such findings of fact, so made by the trial judge, are conclusive if they are supported by competent evidence in the record. No reviewing court may properly set aside or modify those findings if so supported by competent evidence in the record." *State v. Gray,* 268 N.C. 69, 150 S.E. 2d 1 (1966). *Accord, State v. McVay and Simmons,* 277 N.C. 410, 177 S.E. 2d 874 (1970) ; *State v. Blackwell,* 276 N.C. 714, 174 S.E. 2d 534 (1970) ; *States v. Barnes,* 264 N.C. 517, 142 S.E. 2d 344 (1965). Moreover, it should be noted that the dark shirt worn by defendant, the only identifying item of clothing peculiar to him alone, was chosen by defendant himself—not by the law enforcement authorities. "The officers were under no compulsion, constitutional or otherwise, to remove it. Nor were they required to place similar [shirts on] the other boys in the lineup." *State v. Rogers,* 275 N.C. 411, 168 S.E. 2d 345 (1969). In fact, the clothing worn by all six participants in the lineup was chosen by the subjects themselves. Thus the difference in the shades of color cannot be attributed to the officers and does not amount to the kind of rigged suggestiveness in identification procedures discussed and condemned in *United States v. Wade,* 388 U.S. 218, 18 L.Ed. 2d 1149, 87 S.Ct. 1926 (1967) ; *Gilbert v. California,* 388 U.S. 263, 18 L.Ed. 2d 1178, 87 S.Ct. 1951 (1967) ; and *Foster v. California,* 394 U.S. 440, 22 L.Ed. 2d 402, 89 S.Ct. 1127 (1969).

[8, 9] The total circumstances revealed by this record indicate that the rules established for in-custody lineup identification were substantially followed. See *State v. Rogers, supra,* where these rules are discussed. There is no evidence of suggestions by the police prior to the lineup or of any effort by the officers or anyone else to direct the attention of Renee and Daniel Overby to any particular lineup participant. No apparent physical disparities between the participants rendering defendant especially

conspicuous appear in the record, and six participants in the lineup were a sufficient number to negate any suggestion that defendant was the culprit merely because of his presence. Renee and Daniel Overby had ample opportunity to see defendant at the Tastee-Freez (where he asked another boy for ice and matches) and to observe him as he walked and talked with them prior to the assault. At no time have the children ever identified any other person. It is especially significant that Renee recognized defendant on the street the first time she saw him following the assault upon her. Her identification at that time was unequivocal and she has never wavered. Thus, had the lineup been illegal, as suggested but not shown, there is ample evidence that the in-court identification was of independent origin and therefore competent. The trial court so found. This alone renders the in-court identification competent. *State v. Alexander,* 279 N.C. 527, 184 S.E. 2d 274 (1971). There has been no denial of due process to this defendant. *State v. Harris,* 279 N.C. 177, 181 S.E. 2d 420 (1971) ; *State v. Hill,* 278 N.C. 365, 180 S.E. 2d 21 (1971) ; *State v. Gatling,* 275 N.C. 625, 170 S.E. 2d 593 (1969) ; *State v. Williams,* 274 N.C. 328, 163 S.E. 2d 353 (1968). See *State v. Rogers, supra,* for cases from other jurisdictions which illustrate the suggestive, unfair type of lineup referred to in *Wade* and *Gilbert* and condemned in *Foster.*

[10, 11] Every violation of a constitutional right is not prejudicial. Some constitutional errors are deemed harmless in the setting of a particular case, not requiring the automatic reversal of a conviction, where the appellate court can declare a belief that it was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 17 L.Ed. 2d 705, 87 S.Ct. 824, 24 A.L.R. 3d 1065 (1967) ; *Harrington v. California,* 395 U.S. 250, 23 L.Ed. 2d 284, 89 S.Ct. 1726 (1969). Unless there is a reasonable possibility that the evidence complained of might have contributed to the conviction, its admission is harmless. *Fahy v. Connecticut,* 375 U.S. 85, 11 L.Ed. 2d 171, 84 S.Ct. 229 (1963). Applying that test to the facts in this case, we see no reasonable possibility that the lineup here could have led to a mistaken identification or contributed to defendant's conviction. After all, the victim had identified this defendant on the street only two or three hours prior to the lineup. But for the on-street identification there would have been no lineup. This conclusively shows that defendant's in-court identification originated independently, and admission of evidence concerning the lineup was entirely

harmless. *Chapman v. California, supra; Harrington v. California, supra; State v. Brinson,* 277 N.C. 286, 177 S.E. 2d 398 (1970) ; *State v. Smith,* 278 N.C. 476, 180 S.E. 2d 7 (1971) ; *State v. Fletcher and Arnold,* 279 N.C. 85, 181 S.E. 2d 405 (1971). Defendant's third, fourth and fifth assignments are overruled.

[12]   Defense counsel proposed to ask a State's witness on cross-examination if defendant, when told by the witness that he was under arrest for rape, did not immediately deny his guilt. In the absence of the jury the witness stated that the defendant did deny it. The court sustained objection to the question and excluded the answer. This is the basis for defendant's sixth assignment of error.

Defendant did not take the witness stand and offered no evidence whatever. The proposed cross-examination was therefore not competent to corroborate the defendant or, for that matter, any other witness. It was properly excluded as a self-serving declaration. *State v. Tippett,* 270 N.C. 588, 155 S.E. 2d 269 (1967) ; *State v. Maynard,* 247 N.C. 462, 101 S.E. 2d 340 (1958) ; *State v. Davis,* 246 N.C. 73, 97 S.E. 2d 444 (1957) ; *State v. McCanless,* 182 N.C. 843, 109 S.E. 62 (1921). This assignment is not sustained.

There was ample evidence to carry the case to the jury and to sustain the verdict. Prejudicial error has not been shown, and the judgment must therefore be upheld.

No error.