STATE OF NORTH CAROLINA v. BETTY ANN CRONAUER

No. 8219DC1102

(Filed 20 December 1983)

**Arrest and Bail § 11— appearance bond—improperly required—not binding**

> An appearance bond required by a district court in North Carolina, which was based on an extradition warrant from California, imposed terms and conditions beyond those authorized by the Uniform Extradition Act and, therefore, did not bind either principal or surety.

> Chief Judge VAUGHN and Judge WHICHARD concurring.

APPEAL by defendant from *Montgomery, Judge.* Order entered 28 May 1982 in District Court, ROWAN County. Heard in the Court of Appeals 29 August 1983.

After defendant married Michael Cronauer, a widower, in California in 1977, his five minor children lived with them. A year later the entire family moved to North Carolina where they all lived together until May 20, 1980, when Cronauer was killed in an automobile accident. The five children continued to reside with defendant and on May 27, 1980, she was appointed guardian of each of the children by the Rowan County Clerk of Superior Court. On July 22, 1980, Jennifer Lynn Reese, the children's half-sister, secretly came to North Carolina and without defendant's knowledge took four of the five children to her home in Califor-

nia, the other child, John Cronauer, remaining in North Carolina with defendant.

Mrs. Reese then went before the Orange County, California court and petitioned that she be appointed guardian for all five children. An interim order dated July 31, 1980 directed that the four children in California remain where they were and the child in North Carolina remain where he was until the application was acted upon. On November 26, 1980 the California court ruled that it had jurisdiction over the four children there, one of which was the child, Jody Lynn Cronauer, and appointed Mrs. Reese as their guardian. In February, 1981 defendant went to California and brought the child Jody Lynn Cronauer back to North Carolina with her without obtaining Mrs. Reese's permission.

On March 5, 1981, at the instance of Mrs. Reese, a felony warrant against defendant was issued by the California court. The warrant, in pertinent part, reads as follows:

> "Complaint on oath having this day been laid before me that the crime of felony, to-wit: 278 PC has been committed, and accusing defendant BETTY ANN CRONAUER thereof, you are therefore commanded forthwith to arrest the above-named defendant and bring said defendant before me at the above-entitled court."

On March 11, 1981, a fugitive warrant based thereon was issued by the Rowan County District Court which, in pertinent part, reads as follows:

> Based on the attached affidavit, the UNDERSIGNED FINDS THAT THERE IS PROBABLE CAUSE TO BELIEVE that:
>
> (x) On or about the 24th day of February, 1981, the crime of Violation 278 California Penal Code was committed in the State of California, and that the defendant named above was charged in the criminal courts of Orange County, State of California, with the commission of that crime, and that since that time the defendant has fled from justice in that state and is now in the State of North Carolina and subject to arrest under the provisions of G.S. 15A-733.
>
> YOU ARE DIRECTED TO ARREST THE DEFENDANT NAMED ABOVE AND BRING HIM WITHOUT UNNECESSARY DELAY BEFORE A JUDICIAL OFFICIAL TO ANSWER THE CHARGES SET OUT ABOVE.

The affidavit referred to therein was as follows:

> Lt. G. A. Sides, being duly sworn states that he has received:

> (x) a copy of a (warrant) (indictment) from Orange County, State of California, which is attached; stating that the defendant named above has been (charged with) (convicted-of) the crime of Violation 278 California Penal Code in the State of California, which crime was committed on or about the 24th day of February, 1981.

> The affiant further states that he has reasonable grounds to believe that:

> (x) the defendant named above has fled from justice in that other state;

> and that the affiant has reasonable grounds to believe that the defendant named above is now in the State of North Carolina and is subject to arrest under the provisions of G.S. 15A-733 and/or G.S. 15A-734.

The California Governor also sent an extradition request to the Governor of North Carolina, who, after investigation, denied it upon the grounds that it was a civil matter and North Carolina had prior jurisdiction of the child since defendant had been her duly appointed guardian.

> Before the fugitive warrant was served on defendant, a motion to dismiss was submitted to the court March 23, 1981, but the court declined to hear it because the State would not consent thereto. Instead, the court continued the hearing until such time as "defendant Betty Ann Cronauer has submitted herself to this Court," with the proviso, however, that it "not be heard prior to trial without the consent of the State pursuant to G.S. 15A-953." Defendant submitted herself to the court March 26, 1981, but her motion to dismiss was not heard because the State still objected to it being heard before trial. The following orders were also entered that same day, presumably in sequence:

> ORDER IN A FIRST APPEARANCE — G.S. 15A-601-606
> [by Judge Grant]

> It appearing to the Court that the above-named defendant was present in court and was informed of the charges

against him/her, of his/her right to counsel, of his/her eligibility for release under Chapter 15A, Article 26—Bail, and of his/her right to remain silent. The Court further finds that the defendant was advised and fully understood his/her right to remain silent, his/her right to counsel and his/her eligibility or noneligibility for bail and the charges against him/her.

That G. Carlton, Attorney at Law, [was-waived] [was-appointed] [was privately employed] to represent the defendant.

That pursuant to 15A-606, this cause is set for a Probable Cause Hearing on the 6 day of April, 1981.

By consent, the State and attorney for defendant [defendant], this matter is set out [earlier than] [later than] the statutory [minimum] [maximum] period.

That witnesses who were present, the defendant, his/her attorney of record, were informed of the date of the Probable Cause Hearing.

RELEASE ORDER—FIRST APPEARANCE [By Magistrate Williams]

To the defendant named above:

You are ordered to appear before the District Court at Salisbury, N. C., on the 26 day of March, 1981, at 9:30 o'clock, A.m., and at all subsequent continued dates. If you fail to appear you will be arrested and may be imprisoned for as many as three years and fined as much as $3,000.

Charge: Fugutive [sic] Warrant.

Your release is authorized upon your execution of: ( ) Your WRITTEN PROMISE TO APPEAR, ( ) Your UNSECURED BOND of $_____, Your SECURED BOND of $_____, ( ) Your CUSTODY RELEASE TO _____. You will be arrested if you violate the following restrictions:

release, if any to be determined by the presiding District Court Judge.

This order supersedes all previous Release Orders.

SUPPLEMENTAL RELEASE ORDERS [by Judge Grant]

The above Release Order is modified as follows:
$10,000.00 secured bond

ORDER FOR COMMITMENT [by Magistrate Williams]

To the custodian of the Rowan County Detention Facility:

You are ordered to receive into your custody the above-named defendant who is charged as shown above and who may be released if authorized above.

If the defendant is not sooner released, you are ordered to:

( ) produce him in District Court _____ for (a first appearance) (trial) at _____ a.m. on the _____ day of _____, 19____.

( ) hold him for the following purpose: _____.

This order supplements all previous Orders for Commitment.

To avoid being committed defendant posted an appearance bond in the amount of $10,000, as required by the court. When the probable cause hearing was held April 6, 1981, defendant did not appear and an order forfeiting the bond was entered. Defendant moved to vacate the forfeiture, but judgment absolute was rendered against the bond. After the Governor denied extradition, the State filed a dismissal as to the fugitive warrant, defendant then petitioned for a remittance of the bond, and an order remitting $5,000 of the $10,000 forfeiture was entered. The defendant appealed from the court's refusal to remit the entire amount.

*Attorney General Edmisten, by Special Deputy Attorney General Isham B. Hudson, Jr., for the State.*

*Graham M. Carlton for defendant appellant.*

PHILLIPS, Judge.

In our opinion the case against the defendant was a nullity from its inception and the bond required in connection therewith is of no greater force and therefore must be cancelled. The jurisdictional papers in the case—(the North Carolina fugitive warrant, fugitive affidavit, and California warrant attached to it,

which, in effect, constitute "the warrant" for the purpose of this case)—were insufficient to justify the defendant's arrest, and defendant's motion to dismiss should have been granted upon defendant submitting herself to the court's jurisdiction.

In this state, before one can be lawfully arrested and detained under a warrant, it must allege all of the constituent elements of the crime sought to be charged. *State v. Riera*, 276 N.C. 361, 172 S.E. 2d 535 (1970). It must contain "a plain and concise factual statement" supporting every element of the alleged offense. G.S. 15A-924(5). Not only must the warrant, as required by rudimentary due process concepts, explicitly apprise the accused of the offense he is charged with committing so he will know how to answer and prepare his defense, but the averments also must be sufficient to enable the court to proceed to judgment, *State v. Jones*, 242 N.C. 563, 89 S.E. 2d 129 (1955), and to bar a subsequent prosecution for the same offense. *State v. Taylor*, 280 N.C. 273, 185 S.E. 2d 677 (1972). When another state's criminal law is involved, as is the case here, reasonable leeway commensurate therewith must be allowed the state in issuing and phrasing the arrest papers, and we do not hold that a fugitive warrant must be as full and detailed as a local warrant for a like offense. We do hold, however, that one charged with committing a crime elsewhere cannot be lawfully arrested and detained in this state under a warrant and its attachments that does not even identify the criminal acts that were allegedly committed.

The only information of consequence that the papers under which defendant was arrested and incarcerated conveyed to the court and the defendant was that her alleged crime violated "278 California Penal Code" and occurred "on or about the 24th day of February, 1981." None of the papers either stated generally what acts are made criminal by Section 278 of the California Penal Code or specifically what acts defendant allegedly committed in violation of it. The child Jody Lynn Cronauer was not even mentioned in the arrest papers. Indeed, the very first intimation in the record that the crime defendant allegedly committed consisted of taking the child Jody Lynn Cronauer away from the home of her California appointed guardian is contained in the defendant's petition to remit the bond forfeiture, which paper was filed March 5, 1982, fifty-one weeks after the warrant here was issued.

G.S. 15A-954(a)(10) requires the court on motion of the defendant to dismiss a criminal pleading that fails to charge an offense in accord with our law. Upon the warrant's glaring deficiencies being called to the court's attention, it was obliged to dismiss the case and permit defendant to go her way; and, for the reasons discussed below, had no authority to schedule further hearings that were totally irrelevant to the extradition proceeding that defendant was involved in or to require her to post the type of bond that was given before being released from jail. The judge's assumption that under G.S. 15A-953 he was powerless to rule on the matter "before trial" unless the State consented thereto was mistaken. By its express terms, G.S. 15A-953 is limited to "misdemeanor prosecutions in the district court," whereas, this case involves a felony fugitive warrant; and under G.S. 15A-954(c), a motion to dismiss a criminal pleading because it fails to charge an offense can be made at any time.

The legal foundation for the bond required of defendant was also deficient in that it was not the type of bond that the court was authorized to require in the situation that existed. Since she was not charged with committing a crime in this state, the statutes that govern the processing of such charges had no application. The statutes that applied to defendant's situation are all contained in the Uniform Criminal Extradition Act; those particularly applicable are G.S. 15A-733, 735, 736, and 738. Since these statutes provided the only authority for arresting and detaining defendant in the first place, compliance with them was mandatory. Though the fugitive warrant stated that its authority was G.S. 15A-733 and 15A-734, its only authority was G.S. 15A-733, as G.S. 15A-734, by its terms, applies only to fugitives that are arrested *without* a warrant. Under G.S. 15A-733, a fugitive arrested with a warrant must be immediately taken before a judge or magistrate. Upon that being done, unless bail is allowed *pursuant to G.S. 15A-736*, G.S. 15A-735 requires that the judge or magistrate commit the fugitive to the county jail for a *specified time*, not exceeding thirty days, so as to enable the Governor to investigate and decide the extradition request. If bond is permitted, G.S. 15A-736 requires that it be "conditioned for his appearance before him *at a time specified* in such bond, and for his surrender, to be arrested upon the warrant of the Governor of this State." (Emphasis supplied.) G.S. 15A-738 authorizes the

forfeiture of the bond if the fugitive so arrested "fails to appear and surrender himself according to the conditions of his bond." These mandatory procedures were not followed in this case; instead, the court undertook to process the case as though defendant had been charged with committing a crime in this state.

At the outset, the order declining to act on defendant's motion provided that "this matter may not be heard prior to trial without the consent of the State," though defendant, of course, faced no trial in court, but was there only to await the decision of the Governor. Immediately thereafter, the "First Appearance Order" was entered, stating that defendant was eligible for release "under Chapter 15A, Article 26—Bail," though the statutes in that Article (G.S. 15A-531, *et seq.*), as G.S. 15A-534 plainly shows, authorize only the *pretrial* release of those charged with violating our criminal laws, and have no application to extradition proceedings. The First Appearance Order also scheduled a probable cause hearing, an anomaly neither mentioned in nor authorized by the Uniform Criminal Extradition Act—under which the Governor rather than the court decides whether extradition is justified, and it is forbidden that the guilt or innocence of the accused be inquired into "except as it may be involved in identifying the person held." G.S. 15A-740. The Release Order, which was modified only by the $10,000 bond requirement, directed her to appear before the District Court that same day, March 26, 1981, and "at all subsequent continued dates." And the bond was indistinguishable from the bonds that are routinely given by those facing criminal trials in this state; instead of being conditioned for her appearance at a time specified for surrender to the Governor, as G.S. 15A-736 required, it was conditioned as follows:

CONDITIONS

(x) Pretrial Release—The conditions of this bond are that the above named defendant shall appear in the above entitled action whenever required and will at all times render himself amenable to the orders and processes of the Court. It is agreed and understood that this bond is effective and binding upon the obligors throughout all stages of the proceedings in the trial divisions of the General Court of Justice until the entry of judgment in the dis-

trict court from which no appeal is taken or until the entry of judgment in the superior court.

Clearly, the bail bond given by defendant was without statutory authority. Under our law, a bail bond taken without proper authority is void and binds neither principal nor surety. *State v. Bowser*, 232 N.C. 414, 61 S.E. 2d 98 (1950).

The order appealed from is reversed and upon remand the District Court will enter an order remitting the remainder of defendant's bond.

Reversed and remanded.

Chief Judge VAUGHN and Judge WHICHARD concur.

Chief Judge VAUGHN and Judge WHICHARD concurring.

We concur only in that part of the opinion holding that the bond required by the court imposed terms and conditions beyond those authorized by the Uniform Extradition Act and, therefore, did not bind either principal or surety. We agree that the Order should be reversed and the case remanded for an Order remitting the remainder of defendant's bond.