STATE OF NORTH CAROLINA v. BERNARDINO ZUNIGA

No. 156A85

(Filed 7 July 1987)

1. **Criminal Law § 161 — contentions about nontestimonial identification order — no exceptions, assignments of error, arguments — not before court**

    In a prosecution for first degree murder and rape, defendant's argument that a nontestimonial identification order violated the federal constitution was not properly before the court where defendant did not except to the trial court's finding that the basis of defendant's motion to dismiss was the failure to fully comply with the requirements of N.C.G.S. Chapter 15A; the issue of whether the taking of samples was in violation of the article governing execution of warrants was not properly before the court because it was not raised at the suppression hearing or assigned as error; and the assignment of error concerning the execution of the nontestimonial identification order was deemed abandoned because defendant made no argument indicating the way in which the taking of the samples constituted a substantial violation of any of the provisions of Art. 14 of N.C.G.S. Chapter 15A.

2. **Criminal Law § 178 — prior ruling — search lawful — law of the case**

    In a prosecution for murder and rape where defendant was detained in Tennessee as a result of a request from the Alexander County Sheriff's Department and several items were seized from defendant at that time, the N. C. Supreme Court's original ruling that the search was lawful remained the

law of the case where the defendant did not persuade the Court that the prior determination was made under a misapprehension of the facts.

**3. Constitutional Law § 66— defendant not present at hearing on motion for change of venue—no prejudice**

   In a prosecution for rape and murder, any error in allowing defendant's motion for a change of venue in his absence was harmless beyond a reasonable doubt. Sixth Amendment to the U. S. Constitution.

**4. Constitutional Law § 31— denial of funds for private investigator—no error**

   The trial court did not err in a prosecution for rape and murder by denying defendant's motion for funds to hire a private investigator where defendant argues that he was in special need of an investigator because his primary language was Spanish, but defendant was not to conduct witness interviews himself and there was no language handicap borne by defense counsel. Moreover, defendant's motion at trial was for funds to hire an investigator to interview the State's witness who conducted the serological test, not for funds to conduct an independent serological examination. N.C.G.S. § 7A-450(b).

**5. Constitutional Law § 31— denial of funds to hire jury selection expert—no error**

   The trial court did not err in a prosecution for rape and murder by denying defendant's motion for funds to hire a jury selection expert where the affidavit submitted by the proposed expert revealed that his expertise lies in the area of small group social psychology and there was nothing to suggest that the expert would be of any particular assistance in excluding biased persons from the jury in a group *voir dire.*

**6. Jury § 6.4— death case—no particularized questioning into opposition to death penalty—no error**

   The trial court did not err in a prosecution for first degree rape and murder by removing potential jurors opposed to the death penalty without a particularized questioning into the precise nature of the juror's opposition to the death penalty.

**7. Jury § 6.2— jury selection—prosecutor's question—no gross impropriety**

   In a prosecution for first degree rape and murder, there was no gross impropriety requiring the trial judge to intervene in the absence of objection where the prosecutor asked many of the potential jurors if they would be able to recommend death "for what defendant did to this little girl."

**8. Criminal Law § 50.1— testimony as to source of bloodstains on victim's shirt—erroneously admitted—no prejudice**

   There was no prejudice in a prosecution for first degree rape and murder from the erroneous admission of opinion testimony by a forensic pathologist that bloodstains on the front of the victim's shirt could have been caused by someone wiping a knife blade on the shirt. N.C.G.S. § 8C-1, Rule 702.

**9. Criminal Law § 51— SBI fracture match expert—testimony properly admitted**

   The trial court did not abuse its discretion in a prosecution for first degree rape and murder by admitting the testimony of an SBI "fracture

match" expert regarding pieces of torn newspaper, despite the fact that there is no recognized scientific or technical field of fracture match comparisons, where there was evidence to support the trial judge's conclusions that the agent was an expert in the field.

**10. Criminal Law § 102.6— rape and murder—prosecutor's argument on emotion— no error**

The trial court did not err by not intervening *ex mero motu* in a prosecution for first degree rape and murder where the prosecutor argued at the closing of the guilt phase that there was emotion in the case and that the victim was a "little child of God." One defense counsel argued that this was an emotional case and that he wanted the jury to be emotional, and the prosecutor agreed with defendant's other counsel, who had urged the jury not to convict out of emotion.

**11. Criminal Law § 102.6— rape and murder—prosecutor's argument on deterrence—not grossly improper**

The prosecutor's argument in a rape and murder trial that "we can't let this murder go unavenged" was not grossly improper.

**12. Criminal Law § 102.6— rape and murder—prosecutor's argument on admissibility of evidence—no error**

There was no error in a prosecution for rape and murder where the State argued that "if there is anything wrong with [the evidence], it would never have gotten to where you could look at it anyway." The purpose of the argument appears to have been to rebut any contention by the defendant that there was a change in the condition of the physical evidence.

**13. Criminal Law § 102.7— rape and murder—prosecutor's argument on credibility of witness—no error**

There was nothing improper in a prosecutor's argument in a prosecution for rape and murder concerning the credibility of a witness.

**14. Criminal Law § 102.6— rape and murder—prosecutor's argument that defendant enjoyed killing his victim—no error**

The trial judge did not err by not intervening *ex mero motu* in a prosecution for rape and murder where the prosecutor seemed to suggest that defendant enjoyed killing his victim where defendant did not object to that portion of the argument or make it the subject of an assignment of error; moreover, it was not too speculative for the jury to infer that defendant committed both acts with intent to gratify his desire.

**15. Criminal Law § 102.6— rape and murder—prosecutor's argument—not improper**

A prosecutor's argument was not improper in a prosecution for rape and murder where a fair reading of the argument was that the prosecutor was anticipating a defense argument rather than apologizing for the weakness of the State's case.

**16. Criminal Law § 102.9 — rape and murder — prosecutor's argument that defendant would commit another crime if acquitted — no prejudice**

In a prosecution for rape and murder, any impropriety in the prosecutor's apparent argument that defendant would commit another crime if acquitted was cured by the court's subsequent instructions on the law.

**17. Homicide § 18.1 — premeditation and deliberation — evidence sufficient**

There was sufficient evidence in a prosecution for rape and murder from which the jury could have found premeditation and deliberation in the testimony of the medical examiner that the killing was accomplished by a person stabbing the victim through the neck, partially removing the knife, and then plunging it home again. Given the manner of the killing, the age of the victim, her prior relationship with defendant, the disparity in their sizes, and the fact that hair was torn from the victim's scalp, the jury was entitled to believe that defendant premeditated and deliberated for some period of time before killing the victim.

**18. Rape and Allied Offenses § 5 — rape of seven-year-old girl — evidence sufficient**

The trial court did not err by denying defendant's motion to dismiss a charge of first degree rape where the evidence showed that the victim had been penetrated by a human penis, that she was seven years old when the intercourse occurred, and that defendant was twenty-seven years old. The evidence of blood on the victim's legs and on defendant's shorts was sufficient to permit the jury to infer that the victim was alive when she was raped; moreover, the question of whether forcible rape may be committed against a corpse was not before the court because there is no requirement that the rape of a child be assaultive in character.

**19. Homicide § 30 — first degree rape and murder — failure to submit second degree murder — no error**

The trial court did not err in a prosecution for first degree rape and murder by not instructing the jury on second degree murder as a lesser-included offense where the evidence compelled the conclusion that defendant premeditated and deliberated the killing and defendant argued that he was not the person who stabbed the victim, not that it was not a premeditated and deliberated act.

**20. Homicide § 25.2 — first degree murder — instruction on premeditation and deliberation — no error**

Where the defendant in a first degree murder prosecution argued that there was insufficient evidence to support the trial judge's instructions on premeditation and deliberation but did not specify in his brief which of the factors in the judge's instruction was not supported or in what manner the instruction was erroneous, the assignment of error was overruled.

**21. Homicide § 25.1 — instruction on merger rule — no prejudicial error**

The trial court did not err in a first degree rape and murder prosecution in its instruction on the merger principle; even if the instruction was erroneous, it was not plain error and the instruction was not objected to at trial.

**22. Criminal Law § 135.9— death sentence—two nonstatutory mitigating factors not submitted—no error**

There was no prejudicial error in the sentencing phase of a prosecution for first degree murder from the trial court's failure to submit the mitigating factors that defendant had no history of violence or violent acts and that he was raped while in prison. The fact that defendant was raped while in prison does not have mitigating value as to the crime charged, and, while defendant's history of nonviolence may have had mitigating value, there was no prejudice because the mitigating value that defendant argues he was erroneously denied was found in other factors already submitted to the jury; moreover, the jury found seven of the twelve mitigating factors presented and nonetheless returned a recommendation of death.

**23. Criminal Law § 135.7— death instructions—no error**

The trial court did not err in the sentencing phase of a first degree murder prosecution when, after sustaining the State's objection to defendant's argument that each individual should stand firm in their convictions regardless of what the community expected, the court told the jury "you will listen to each element." Defendant did not request at the trial that the court instruct the jury that community pressure is not an element of the sentencing consideration; defendant continued to argue without objection that each juror must individually agree with the verdict; and the trial judge correctly instructed the jury that it was its duty to determine the sentencing recommendation based solely upon the existence of mitigating and aggravating factors which must be based upon evidence presented in the courtroom.

**24. Criminal Law § 102.12— murder prosecution—sentencing phase—prosecutor's argument—no error**

In the sentencing phase of a prosecution for first degree murder, there is no prejudicial error in a prosecution argument which defendant contended improperly urged the jury to consider an aggravating factor that was not submitted by the judge where the prosecutor was attempting to explain to the jury why the factor was no longer proper for its consideration, defendant did not object at trial, and the court instructed the jury that there was only one aggravating factor to be considered.

**25. Criminal Law § 102.12— sentencing phase of capital trial—prosecutor's scriptural references—no error**

The trial court did not abuse its discretion by not intervening *ex mero motu* in the sentencing phase of a first degree murder prosecution where the prosecutor made scriptural references during his argument on the death penalty.

**26. Criminal Law § 102.12— death sentence—prosecutor's argument on deterrence —no error**

There was no error in the sentencing phase of a prosecution for first degree murder where the prosecutor argued that "justice is making sure that Bernardino Zuniga is not ever going to do this again." The argument was not that the death penalty would have a deterrent effect on crime, but rather that the execution of Bernardino Zuniga would foreclose further commission of crimes by him.

**27. Criminal Law § 135.7— sentencing phase of first degree murder prosecution— failure to give proposed instructions—no error**

The trial judge in the sentencing phase of a first degree murder prosecution did not err by failing to give defendant's proposed instructions on the nature of mitigation; the life sentence as the norm for first degree murders; and the meaning of the age mitigating factor. The instruction given on mitigation has already been approved; the instruction that the life sentence is the norm would encourage the jury not to give individualized consideration to the sentence; and there was no evidence to entitle defendant to the submission of the age mitigating factor.

**28. Criminal Law § 135.10— death sentence—not based on passion or prejudice**

Defendant in a first degree murder prosecution failed to show that the jury recommended death based on passion or prejudice where there was plenary evidence to support the aggravating factor that the killing was accomplished during the rape of the victim, and, while the prosecutor did make several references to the age of the victim, each juror said on *voir dire* that he or she would not be influenced by the age of the victim.

**29. Criminal Law § 135.10— death sentence—one aggravating factor—not disproportionate**

The death sentence was not disproportionate to the crime where the only aggravating factor was that the murder was committed while defendant was engaged in the commission of first degree rape; the case was similar to other cases of murder and sexual assault and it is not unusual for the jury to recommend death in a case of rape and murder; and, while the brutality of the killing was not submitted and the age of the victim could not be submitted as an aggravating factor for the murder, the jury could still have considered the brutality of the rape and the age of the victim in giving greater weight to the aggravating factor that the killing was accomplished during the commission of the rape.

DEFENDANT appeals as of right pursuant to N.C.G.S. § 7A-27(a) from a sentence of death for first-degree murder and a life sentence for first-degree rape. Defendant was tried on these charges before the *Honorable Donald L. Smith* and a jury at the 11 February 1985 Criminal Session of Superior Court, DAVIDSON County, and was convicted. The sentencing hearing was held before the jury and the *Honorable Hamilton H. Hobgood,* retired Superior Court Judge called in as emergency judge to preside on 18 February 1985. Heard in the Supreme Court on 15 April 1987.

*Lacy H. Thornburg, Attorney General, by Joan H. Byers and William N. Farrell, Jr., Special Deputy Attorneys General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Robin E. Hudson, Assistant Appellate Defender, for defendant-appellant.*

MEYER, Justice.

Seven-year-old April Lee Sweet was killed sometime during the day of 13 July 1982. It appears that the last person other than her assailant to see April alive was her grandfather, Calvin Johnson. At a little before 10:00 a.m., Johnson and his wife left April alone in their house and went to work in his tobacco fields. He drove his pickup truck toward the field, following a tractor driven by his son Victor, and upon which his daughter Linda was seated. Johnson saw a taxicab heading along the road toward his house. He testified at trial that there was a Mexican male in the passenger's seat of the taxicab—a man whom he recognized as Richard Lopez, a former employee. He also testified at trial that defendant was the same man known to him as Richard Lopez. Johnson testified that defendant had visited in his house on at least two occasions and that on at least one occasion, April had tried to talk to defendant. Johnson also testified that his wife may have given defendant a photograph of April. Linda Johnson also testified that she had seen defendant in the taxicab that morning.

When Johnson returned home at about 12:15 p.m., he did not find his granddaughter. After searching for some time for April, Johnson called the Alexander County Sheriff's Department. Johnson was interviewed by Sheriff Thomas E. Bebber. Johnson told the sheriff about the sighting that morning of the man he knew as Richard Lopez. At that point, the sheriff notified his department to be on the lookout for a Mexican male named Richard Lopez.

At about 2:00 p.m., the Alexander County dispatcher called Captain Larry Elder with information that a Mexican male was standing at the cab stand in Hiddenite. Captain Elder approached the defendant, told him that he was investigating a missing person report, and asked defendant to accompany him to Taylorsville to be viewed by the taxi driver, Bill Call. Defendant agreed and got into the back seat of Elder's car. At that time, he was carrying a bag of what appeared to Elder to be clothing.

Defendant was viewed by both Bill Call and Ralph Bishop, Call's employer. Both told Elder that defendant was not the man whom Bill Call took to the Johnson home that morning. At trial, Call testified that he had not been able to identify defendant because all Mexicans looked alike to him. After defendant was

released, he was taken to Statesville, where he left on a bus headed for Arkansas.

April's body was found by a search party sometime after 5:00 p.m. She was lying on her back, nude from the waist down. Her shorts and panties had been removed and were lying nearby. Dr. John Butts, from the Medical Examiner's Office in Chapel Hill, testified without objection that April had been stabbed through her neck and that in his opinion she had been penetrated by a penis, resulting in tearing of the "birth canal." Samples were taken from April's body. Debris, including newspaper, was collected from the immediate area for examination.

At about 8:00 p.m., Johnny Mitchell, another cab driver in Taylorsville, told Agent Lester of the SBI that he had taken a Mexican male to Statesville that afternoon to catch a bus for Arkansas. At about 10:12 p.m., Lester sought authorization from his superior to detain defendant at Knoxville, Tennessee, an intermediate stop. At about 10:20 p.m., SBI Agent Melton and Captain Elder found a pair of tan pants stuffed under the mat on the floor of the back seat of Captain Elder's car. The pants were bloodstained. Captain Elder testified at trial that nobody but defendant had been in the back seat of his car that afternoon or evening. At 10:42 p.m. Agent Lester sent this message to the Knoxville Police Department:

> July 13, 1982, Knoxville, P.D. Investigating rape and murder of seven year old white female. The suspect is a Mexican male. Subject possibly is going by the name of Richard. Murder occurred this date. Last name is possibly Lopez. Subject caught bus in Statesville, North Carolina today and bought ticket for Pine Bluff, Arkansas with a stop in your city at 10:45 p.m., this date. Need assistance in holding for investigation purposes and to interview suspect. Will leave immediately upon contact. Contact if suspect is on bus. Victim was stabbed with a knife, and suspect is approximately 5 foot, 9, [] 155 pounds, wearing blue jeans, a blue or gray shirt, and possibl[y] a baseball hat. If you need any further contact, we will furnish. Alexander County Sheriff's Department, Taylorsville, North Carolina.

The bus carrying defendant arrived at Knoxville just before 11:00 p.m. Detective Moyer of the Knoxville Police Department

met the bus and detained defendant, the sole Mexican male on board. After defendant was taken into custody, Detective Moyer notified Agent Lester. Agent Lester set out for Knoxville by car, along with two other officers and Calvin Johnson.

At the police station in Knoxville, officers took hair and fingernail scrapings from the defendant. As defendant took down his trousers for a pubic hair sample, Detective Moyer noticed that defendant pulled both trousers and underpants down simultaneously. Later, having become suspicious, Detective Moyer asked to see defendant's undershorts. The shorts had blood on the front. This blood was later found to be consistent with that of the victim. Among the personal effects seized from defendant was a small photograph of April Sweet.

When the party from North Carolina arrived, Calvin Johnson identified defendant as the person he had seen in the taxicab near his house. Defendant, with the assistance of an interpreter, waived his objection to extradiction, but invoked his fifth amendment right to silence. He was transported to North Carolina, where he was formally charged with first-degree murder and rape.

Defendant makes numerous assignments of error in all stages of the prosecution against him. For the sake of clarity, these errors will be discussed in four groupings: errors at the pretrial stage of the prosecution, errors in jury selection, errors during the guilt/innocence phase of the trial, and errors during the sentencing hearing.

## I. PRETRIAL

[1] On 19 July 1982, the State sought a nontestimonial identification order to obtain samples of blood, hair, saliva, and handwriting from the defendant, as well as to examine the defendant's genitalia. The State moved under N.C.G.S. § 15A-274 for a waiver of the 72-hour prior service rule on the grounds that the victim's hair could be changed or any wounds on the defendant's genitalia could heal before the examination could be carried out. The 72-hour rule was waived, and the defendant was served with the nontestimonial identification order approximately thirty minutes before the examination was conducted. There was no return of

service of the order as required under N.C.G.S. § 15A-280. The State never sought a search warrant.

Defendant made a timely motion to suppress the evidence collected from the nontestimonial identification order. His contention at the suppression hearing was that the evidence was the result of an unlawful search and seizure and that it was collected in violation of N.C.G.S. § 15A-280 (return required within ninety days). The trial judge found that the sole basis of the defendant's motion to suppress was that the requirements of Chapter 15A were not complied with. He then denied the defendant's motion to suppress, holding that the requirements of the nontestimonial identification order do not apply to persons already in custody. Defendant argues that this was error.

It appears from the record that while the defendant alleged in his motion to suppress that the taking of the samples violated not only N.C.G.S. § 15A-280 but also the federal constitution, the judge made the following finding:

(4) That the basis for the defendant's motion to suppress was the failure to fully comply with the requirements of Chapter 15A of the General Statutes of the State of North Carolina.

As no exception to this finding appears in the record, the defendant has failed to properly preserve his constitutional argument, and this argument is not properly before us.[1]

Defendant argues in his brief that the taking of the samples was in substantial violation of Article 10 of Chapter 15A, the article governing the execution of warrants. Because the defendant did not raise this argument at the suppression hearing, or assign as error the failure of the State to procure a warrant for the examination of the defendant, this issue is not properly before us.

---

1. Defendant makes an elaborate argument that the taking of these samples violates both the state and federal constitutions. Although this issue is not properly before us, we note that the federal constitution requires a warrant for the taking of blood samples. *State v. Welch*, 316 N.C. 578, 342 S.E. 2d 789 (1986). However, we also said in *Welch* that an officer's good faith reliance on a nontestimonial identification order would not trigger the exclusionary requirements of either the fourth amendment to the federal constitution or our state statutory exclusionary rule. Moreover, nothing in *Welch* requires a warrant for nonintrusive searches and seizures, such as the taking of hair, saliva, and handwriting samples or the examination of the defendant's genitalia.

Defendant's sole argument at trial was that the taking of the samples violated Article 14 of Chapter 15A of our General Statutes, the article governing the execution of nontestimonial identification orders. Defendant has made no argument to this Court, however, indicating in what way the taking of the samples in this case constituted a substantial violation of any of the provisions of Article 14. This assignment of error is deemed abandoned. N.C.R. App. P. 28.

[2]  Defendant next argues that on the night of the murder, the Alexander County Sheriff's Department instituted a Police Information Network message to Knoxville, Tennessee, requesting that defendant be detained. Several items were seized from the defendant at that time, including the photograph of April Sweet and defendant's bloodstained undershorts. On 17 August 1983, the trial court allowed defendant's motion to suppress this evidence on the ground that the warrantless search was unreasonable. The State appealed this decision, and this Court reversed the trial court, *State v. Zuniga*, 312 N.C. 251, 322 S.E. 2d 140 (1984), holding that since there was probable cause to support the arrest of defendant, the search was a lawful one incident to that arrest.

The State correctly points out that our previous holding that the evidence seized in Tennessee was lawfully seized is the "law of the case" in this matter. *State v. Williams*, 224 N.C. 183, 29 S.E. 2d 744, *aff'd*, 325 U.S. 226, 89 L.Ed. 2d 1577, *reh'g denied*, 325 U.S. 895, 89 L.Ed. 2d 2006 (1944). Therefore, unless there was additional evidence brought forward in the defendant's subsequent trial, or a new theory of exclusion brought to our attention, this issue has already been decided. *State v. Stone*, 226 N.C. 97, 36 S.E. 2d 704 (1946).

In reaching our conclusion that there was sufficient probable cause to arrest defendant in Tennessee, we made the following observation:

Thus, while a reviewing court must, of necessity[,] view the action of the law enforcement officer in retrospect, our role is not to import to the officer what in our judgment, as legal technicians, might have been a prudent course of action; but rather our role is to determine whether the officer has acted as a man of reasonable caution who, in good faith and based upon practical consideration of everyday life, believed

the suspect committed the crime for which he was later charged.

*State v. Zuniga*, 312 N.C. at 262, 322 S.E. 2d at 147.

Defendant argues that our previous decision in this case was based upon a misapprehension of the facts and that the evidence in defendant's trial prevents our prior decision from controlling. In our former opinion we said:

In reaching this conclusion we have attached particular significance to the fact that the murder occurred in a small, rural community; that defendant's presence near the Johnson home was noted by the victim's grandfather and the taxi driver; that he was identified; that suspicion almost immediately narrowed to the defendant; and finally, that defendant fled within hours of the crime.

*Id.* (footnote omitted). Specifically, defendant argues that there was no identification by the taxicab driver that defendant was the Mexican male seen by Johnson on that morning. While this may be true, it does not change the fact that defendant was identified by Calvin Johnson and Linda Mae Johnson as having been that man. Moreover, the taxicab driver did testify that he took a Mexican male to the Johnson home. Defendant next argues that our characterization of the defendant's conduct as flight was incorrect; that because defendant had not been charged, his leaving town to go to Arkansas is not probative of his guilt. While we agree that formal charges had not been leveled against defendant when he left North Carolina, it was surely clear to him that he was being investigated for a crime. His subsequent flight was some evidence of a guilty mind. Finally, defendant argues that Taylorsville is not the "small, rural community" that we characterized in our previous opinion. There was testimony that there were at most two hundred Mexicans in the county at the time of the crime, and only one or two taxicabs in Taylorsville.[2] The testimony of Calvin Johnson and Linda Johnson that they took notice of the cab suggests that it was a noteworthy sight, either because of the nationality of the passenger, the fact that the cab

2. We note that Taylorsville had an estimated population of 1,087 in July 1982 and that, at the same time, the estimated population of Alexander County was 25,932. *N.C. Municipal Population*, Office of State Budget and Management (1983).

was approaching the Johnson house, or both. We find nothing in defendant's brief to persuade us that we made our prior determination under a misapprehension of the facts. Because we have already determined that there was probable cause to arrest the defendant in Tennessee, the trial judge correctly determined that he was bound by our decision as the law of the case. *State v. Jackson*, 317 N.C. 1, 343 S.E. 2d 814 (1986).

[3] Defendant moved, through counsel, for a change of venue from Alexander County. A hearing was held on defendant's change of venue motion on 20 September 1982. The defendant was not present. The court entered an order changing venue from Alexander County to Davidson County. Defendant argues that despite the ruling in his favor, he was denied his sixth amendment rights under the federal constitution by not being present at the change of venue hearing.

Defendant argues that he had a right to be present at all critical stages of the proceedings against him. *Rushen v. Spain*, 464 U.S. 114, 78 L.Ed. 2d 267 (1983). Moreover, defendant argues that in a capital case, this right cannot be waived, *State v. Braswell*, 312 N.C. 553, 324 S.E. 2d 241 (1985), and that conducting the hearing in his absence was thus error per se. Defendant also argues that he was prejudiced by this error as a matter of law and is therefore entitled to a new trial. *Gerstein v. Pugh*, 420 U.S. 103, 43 L.Ed. 2d 54 (1975).[3]

Assuming, *arguendo*, that it was error for the trial court to have conducted the change of venue hearing out of defendant's presence, we conclude that any such error was harmless.

In *Braswell* we said:

"Every violation of a constitutional right is not prejudicial. Some constitutional errors are deemed harmless in the setting of a particular case, not requiring the automatic reversal of a conviction, where the appellate court can declare a belief that it was harmless beyond a reasonable

---

3. Defendant cites *McKasskle v. Wiggins*, 465 U.S. 168, 79 L.Ed. 2d 122, *reh'g denied*, 465 U.S. 1112, 80 L.Ed. 2d 148 (1984), to support this argument. There, the United States Supreme Court held that a defendant's right to self-representation is not amenable to harmless error analysis. This case is not authority for the proposition that the denial of a defendant's right to be present may never be harmless.

doubt." *State v. Taylor*, 280 N.C. 273, 280, 185 S.E. 2d 677, 682 (1972). The right to be present at all critical stages of the prosecution is subject to harmless error analysis. *Rushen v. Spain*, [464] U.S. [114], 78 L.Ed. 2d 267, 272 n.2 (1984). We believe that denial of a defendant's right to confront the witnesses against him is subject to the same harmless error analysis. That is particularly true when the alleged denial consists of the voir dire examination, in the presence of defendant's counsel, of a witness for the State who substantially repeats his voir dire testimony at trial. It is difficult to imagine any way in which defendant was prejudiced by his failure to attend the hearing. After examining the record and assuming error *arguendo* we conclude that any error which may have resulted from defendant's failure to attend the hearing is harmless beyond a reasonable doubt.

*State v. Braswell*, 312 N.C. at 560, 324 S.E. 2d at 247. We concluded in *Braswell* that the right to be present at all stages of the trial is subject to harmless error analysis. *Id. See also Rushen v. Spain*, 464 U.S. 114, 78 L.Ed. 2d 267 (harmless error analysis applies to ex parte communication between juror and trial judge).

Turning to the case at bar, we note that the purpose of the change of venue hearing was to determine whether the defendant would be prejudiced by being tried in Alexander County, where the alleged crimes had been committed. Defendant apparently believed that his interest would be better protected by being tried elsewhere. We are satisfied that any error in allowing the defendant's motion in his absence was harmless beyond a reasonable doubt.

Defendant moved for an interpreter on 10 November 1982. This motion was allowed on 15 December 1982. It appears that when the defendant filed his record on appeal and brief, there was nothing in the record to indicate that the defendant's motion for interpreter had been allowed. From the State's addendum to the record, filed 1 August 1986, it is apparent that a court-appointed interpreter was in fact provided to defendant. This assignment of error is therefore overruled.

[4] Prior to trial, defendant made a motion for funds to hire a private investigator. The defendant argued at the time that an investigator was necessary in order to interview witnesses in the

case, particularly those witnesses who would testify for the State regarding the results of their examination of the physical evidence. Defendant now argues that the denial of this motion was error.

N.C.G.S. § 7A-450(b) entitles defendants to the assistance of experts under certain circumstances:

> (b) Whenever a person, under the standards and procedures set out in this Subchapter, is determined to be an indigent person entitled to counsel, it is the responsibility of the State to provide him with counsel and the other necessary expenses of representation. The professional relationship of counsel so provided to the indigent person he represents is the same as if counsel had been privately retained by the indigent person.

N.C.G.S. § 7A-450(b) (1986). We have said, however, that the burden is on the defendant to show a reasonable likelihood that he will be deprived of a fundamentally fair trial without such assistance. *State v. Oliver*, 309 N.C. 326, 336, 307 S.E. 2d 304, 312 (1983). Several decisions of the United States Supreme Court have approved this analysis. *See Ake v. Oklahoma*, 470 U.S. 68, 84 L.Ed. 2d 53 (1985); *Caldwell v. Mississippi*, 472 U.S. 320, 86 L.Ed. 2d 231 (1985).

Defendant concedes that we have addressed this issue on numerous occasions and have upheld the trial court's denial of funds for an investigator where the investigator was intended merely to interview witnesses in the case. *See, e.g., State v. Gardner*, 311 N.C. 489, 319 S.E. 2d 591 (1984), *cert. denied*, 469 U.S. 1230, 84 L.Ed. 2d 369 (1985); *State v. Parton*, 303 N.C. 55, 277 S.E. 2d 410 (1981). He argues, however, that his request for an investigator did not fall under the rule of these cases. He argues that because his primary language is Spanish, he was in special need of an investigator. While this argument might have some merit if the defendant himself was to conduct witness interviews, we are aware of no language handicap borne by defense counsel.[4] This assignment of error is overruled.

---

4. Defendant makes an additional argument in his brief before this Court: that because he requested an investigator to conduct an independent serological test, he made the necessary showing of particularized need. However, the record shows

State v. Zuniga

**[5]** Defendant also moved before trial for funds to hire a jury selection expert. The motion alleged only that the expert would assist counsel in selecting the jury and that such an expert is necessary in capital cases. Although defendant argues in his brief that the purpose of the expert would have been to help counsel deal with prejudice allegedly faced by defendant, the affidavit submitted by the proposed expert reveals that his expertise lies in the area of small group social psychology, that is, in the effects of group membership on individuals. Apparently, defendant was concerned that individual jurors favoring acquittal or opposing the death sentence would be pressured by the majority to convict or recommend death. The affidavit concluded with the suggestion that a fair trial would require individual rather than group voir dire.[5] There is nothing to suggest that the expert would be of any particular assistance in excluding biased persons from the jury in a group voir dire. In fact, the expert testified in his affidavit that he would have trouble discerning bias against Mexicans in a group voir dire. We see no prejudice to the defendant from the denial of his motion. No effort was made to restrict the defendant's questioning of potential jurors concerning their biases against Mexicans. *Cf. Turner v. Murray*, 476 U.S. 1, 90 L.Ed. 2d 27 (1986) (error to restrict defendant's questioning into racial bias of potential jurors). He has made no particularized showing of how the lack of a jury selection expert denied him a fundamentally fair trial. *State v. Artis*, 316 N.C. 507, 342 S.E. 2d 847 (1986). *See also Ake v. Oklahoma*, 470 U.S. 68, 84 L.Ed. 2d 53.

## II.  JURY SELECTION

**[6]** Defendant next assigns error in the "death qualification" of the jury. During the voir dire, whenever a potential juror said that he or she had moral or religious reservations about recommending the death penalty, the prosecutor would challenge that juror for cause. The trial judge would then ask that juror the following question:

that the request before the trial judge was for funds to hire an investigator to interview the State employees who conducted the serological test, not for funds to conduct an independent serological examination. No such request was before the trial court and is not a proper concern for us here.

5. The defendant did not assign as error the denial of his request for individual voir dire.

> COURT: All right; now, ma'm [sic], if you should be selected as juror for the trial of this case and if after you have heard the evidence and the arguments of counsel and the law and we have reached the punishment phase, if we had all that to occur and if after all that, you were convinced in your own mind beyond a reasonable doubt, that the appropriate punishment under the evidence and the law was a sentence of death, could you return with a verdict that would require the Court to impose that that [sic] sentence?

If the answer to that question was "no," the judge would ask a second question:

> COURT: I take it, ma'm [sic], you could not return a recommendation as I have explained that, a recommendation that the death penalty be imposed no matter what the evidence or the facts were, is that correct?

If the answer to that question was "yes," the challenge for cause would be allowed. In each instance, the defendant moved to rehabilitate the challenged juror. In each instance, the motion was denied. Defendant assigns the denial of his motion to rehabilitate as error.

Defendant's argument is not with the concept of "death qualification," as set out in *Wainwright v. Witt,* 469 U.S. 412, 83 L.Ed. 2d 841 (1985). Rather, defendant argues that the process of removing potential jurors without a particularized questioning into the precise nature of that juror's opposition to the death penalty deprived him of his sixth amendment and fourteenth amendment rights under the federal constitution.

In *Wainwright v. Witt,* the United States Supreme Court set out the standard for excusing potential jurors from sitting on capital cases:

> That standard is whether the juror's views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath."

*Wainwright v. Witt,* 469 U.S. at 424, 83 L.Ed. 2d at 851-52 (quoting *Adams v. Texas,* 448 U.S. 38, 45, 65 L.Ed. 2d 581, 589 (1980)).

The trial judge's questions in the present case correctly followed the *Witt* standard in determining that the prospective juror could not follow the law. We have approved of this type of questioning in other cases. *See, e.g., State v. Johnson,* 317 N.C. 343, 346 S.E. 2d 596 (1986); *State v. Kirkley,* 308 N.C. 196, 302 S.E. 2d 144 (1983).

Recognizing that we have already decided that defendants are not entitled to engage in attempts to rehabilitate, *State v. Oliver,* 302 N.C. 28, 274 S.E. 2d 183 (1981), defendant nonetheless argues that the recent United States Supreme Court decision in *Turner v. Murray,* 476 U.S. 1, 90 L.Ed. 2d 27, requires a reconsideration of this decision. We disagree.

In *Murray,* the United States Supreme Court held that it was error for the trial judge to restrict a defendant's inquiry into the racial prejudices of potential jurors. We find nothing in that case to suggest that defendant has a right to inquire into the precise nature of a potential juror's views on the death penalty. This assignment of error is overruled.

**[7]** Defendant's next assignment of error relates to the phrasing of the prosecutor's question regarding the ability of the juror to recommend the death penalty. In many instances, the juror was asked whether, if the juror found that any aggravating factors outweighed any mitigating factors, he or she would be able to recommend death "for what [defendant] did to this little girl."

Defendant argues that the prosecutor's question suggests that the issue of guilt had already been decided against defendant and that the prosecutor's question was so grossly improper as to have required the judge to intervene. *State v. Kirkley,* 308 N.C. 196, 302 S.E. 2d 144; *State v. Johnson,* 298 N.C. 355, 259 S.E. 2d 752 (1979); *State v. Vinson,* 287 N.C. 326, 215 S.E. 2d 60 (1975), *death sentence vacated,* 428 U.S. 902, 49 L.Ed. 2d 1206 (1976). We do not agree. Jury selection is within the sound discretion of the judge. *State v. Wilson,* 313 N.C. 516, 330 S.E. 2d 450 (1985). A fair reading of the prosecutor's question is whether the juror would consider the death penalty if he first determined that any aggravating factor found outweighed any mitigating factors found and that defendant was guilty. Even assuming, *arguendo,* that the question was improper, we find no gross impropriety requiring the trial judge to intervene in the absence of an objection.

### III.  GUILT/INNOCENCE PHASE

[8]  Defendant complains of the admission into evidence of certain opinion testimony by Dr. John Butts, a forensic pathologist with the Medical Examiner's Office in Chapel Hill. Dr. Butts testified as to the nature of the wounds inflicted on April and the condition of the body as he found it. He testified that, in his opinion, the victim died from loss of blood, this having been caused by a stab wound through the neck, severing the internal jugular vein. Dr. Butts also testified over defense objection that, in his opinion, certain bloodstains on April's shirt could have been made by someone wiping a knife blade off on it.

Defendant argues that Dr. Butts was in no better position than the jury to determine the cause of the bloodstains. *See State v. Wilkerson*, 295 N.C. 559, 247 S.E. 2d 905 (1978). We agree.

The rule governing the admissibility of expert testimony is set out in Rule 702 of the Rules of Evidence:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion.

N.C.G.S. § 8C-1, Rule 702 (1986). While Dr. Butts was properly qualified as a forensic pathologist to testify to the nature of the wounds inflicted on April and to the cause of her death, he was not qualified as an expert on the pattern that a knife blade makes when it is wiped on a shirt. This is a matter of common sense, best left to the jury.

While we agree with defendant that the trial judge erred in admitting the testimony of Dr. Butts regarding the cause of the bloodstain, defendant has made no showing as to how he was prejudiced by this evidence. This assignment of error is overruled.

[9]  SBI Special Agent Worsham testified as a "fracture match" expert that a piece of newspaper found under the body of the victim had once been joined with a piece of newspaper found some one hundred fifty to two hundred feet from the victim's body. This second piece of newspaper had on it the number of the post office box rented to defendant. Defendant contends that there is

no recognized scientific or technical field of fracture match comparisons; that this term refers only to the common-sense principle that it is sometimes possible to tell that two pieces of paper, particularly paper upon which there is printing, were at one time joined. Defendant concludes that Agent Worsham's testimony was an improper invasion of the province of the jury.

In *State v. Bullard,* 312 N.C. 129, 322 S.E. 2d 370 (1984), we considered whether a physical anthropologist could testify that a certain footprint matched the footprint of the defendant. Rejecting defendant's argument that footprint analysis is not a proper subject for expert testimony, we said:

> It is not necessary that an expert be experienced with the identical subject area in a particular case or that the expert be a specialist, licensed, or even engaged in a specific profession. Furthermore, the trial judge is afforded wide latitude of discretion when making a determination about the admissibility of expert testimony.

*Id.* at 140, 322 S.E. 2d at 376 (citations omitted). We went on to quote from *State v. King*:

> "Whether the witness has the requisite skill to qualify him as an expert is chiefly a question of fact, the determination of which is ordinarily within the exclusive province of the trial judge. . . .
>
> "A finding by the trial judge that the witness possesses the requisite skill will not be reversed on appeal unless there is no evidence to support it."

*Id.* (quoting with approval from *State v. King,* 287 N.C. 645, 658, 215 S.E. 2d 540, 548-49, *death sentence vacated,* 428 U.S. 903, 49 L.Ed. 2d 1209 (1976) ). *See also State v. Young,* 312 N.C. 669, 325 S.E. 2d 181 (1985).

In the present case, Agent Worsham testified that in his nine years of experience as a forensic chemist, he had made many fracture match comparisons of hair and other fibrous material, that he had testified in more than one hundred cases where fracture matching was involved, and that he had participated in in-house training on fracture match comparisons. His testimony that the two pieces of paper were at one time joined was therefore based

upon his training and experience in forensics. Since there is evidence to support the trial judge's conclusion that Agent Worsham is an expert in fracture match comparisons, we find no abuse of discretion in the admission of his testimony. *State v. Bullard*, 312 N.C. 129, 322 S.E. 2d 370.

[10] Defendant makes several assignments of error regarding the prosecutor's argument at the close of the guilt phase of the trial. His first contention in this regard is that the prosecutor urged the jury to convict out of passion or prejudice. Defendant notes that the prosecutor argued that there is emotion in the case and referred to the victim as a "little child of God." From this, the defendant concludes that the prosecutor incited the jury to disobey the mandate of the court to follow the law. He argues that this conduct entitles him to a new trial, in spite of the fact that he did not object at trial, because the trial judge did not intervene *ex mero motu*. We do not agree.

Prosecutors are granted wide latitude in the scope of their argument. *State v. Monk*, 286 N.C. 509, 212 S.E. 2d 125 (1975). A prosecutor's argument is not improper where it is consistent with the record and does not travel into the fields of conjecture or personal opinion. *State v. Craig & Anthony*, 308 N.C. 446, 302 S.E. 2d 740, *cert. denied*, 464 U.S. 908, 78 L.Ed. 2d 247 (1983). The control of the prosecutor's closing argument is within the discretion of the trial judge. *State v. Johnson*, 298 N.C. 355, 259 S.E. 2d 752 (1979). Only where the prosecutor's argument affects the right of the defendant to a fair trial will the trial judge be required to intervene where no objection has been made. *State v. Harris*, 308 N.C. 159, 301 S.E. 2d 91 (1983). We cannot conclude that the trial judge erred in not intervening *ex mero motu* in these instances. We note that the defendant himself argued through one of his counsel that this was an emotional case and that he wanted the jury to be emotional. We note also that the prosecutor agreed with defendant's other counsel, who had urged the jury not to convict out of emotion. This assignment of error is overruled.

[11] Defendant argues that the prosecutor misled the jury during his argument. First, defendant claims that the prosecutor misrepresented the jury's role in a criminal case. The prosecutor made the following argument:

I've been doing this for fifteen years, and it's hard. You just can't dwell on things like this or it will drive you crazy. It's awful what one human being can do to another one and I see it all the time and you've seen it this week. We cannot allow it to happen and go unpunished.

. . . .

We can't let this murder go unavenged.

Defendant argues that this argument invites the jury to convict out of a desire to deter others from committing similar crimes, an argument we have held improper. *See, e.g., State v. Scott,* 314 N.C. 309, 333 S.E. 2d 296 (1985).

We have upheld arguments where the prosecutor urged the jury to take seriously its duty "to bring criminals to justice in our system." *State v. Britt,* 291 N.C. 528, 538-39, 231 S.E. 2d 644, 652 (1977). We have also allowed prosecutors to argue that the jury should consider the State's evidence and reasonable inferences therefrom and convict the defendant. *See, e.g., State v. Mason,* 317 N.C. 283, 345 S.E. 2d 195 (1986). We conclude that the prosecutor's argument in this case was likewise not grossly improper. This assignment of error is overruled.

[12] Defendant next argues that the prosecutor impermissibly urged the jury to disregard its responsibility by making the following argument:

[B]ecause when we started putting on this evidence each and every item under the Rules of Evidence in this State has to be identified and marked and who did you hand it to and who did you get it from and what condition was it in when you got it from him and what condition was it in when you gave it to them [sic] and he is going to get up here and tell you, "Well, this wasn't that way and that wasn't this way."

Now, let me put all that to rest by saying this, if this wasn't this way and that wasn't that way, that fellow up there (indicating) would never have let it into evidence. So, you need not worry about any of that. If there's anything wrong with it, it would have never gotten to where you could look at it any way.

Defendant contends that the sense of this argument is that because the evidence was admitted, the jurors should believe it to be true. We disagree. The purpose of this argument appears to have been to rebut any contention by the defendant that there was a change in the condition of the physical evidence in the case.

This Court has stated that a two-pronged test must be satisfied before real evidence is properly received into evidence. The item offered must be identified as being the same object involved in the incident and it must be shown that the object has undergone no material change. *State v. Barfield,* 298 N.C. 306, 259 S.E. 2d 510 (1979), *cert. denied,* 448 U.S. 970, *reh'g denied,* 448 U.S. 918 (1980). The trial court possesses and must exercise sound discretion in determining the standard of certainty that is required to show that an object offered is the same as the object involved in the incident and is in an unchanged condition. *Id.* A detailed chain of custody need be established only when the evidence offered is not readily identifiable or is susceptible to alteration and there is reason to believe that it may have been altered. *See State v. Kistle,* 59 N.C. App. 724, 297 S.E. 2d 626 (1982), *review denied,* 307 N.C. 471, 298 S.E. 2d 694 (1983). Further, any weak links in a chain of custody relate only to the weight to be given evidence and not to its admissibility. *State v. Montgomery,* 291 N.C. 91, 229 S.E. 2d 572 (1976). *See also State v. Grier,* 307 N.C. 628, 300 S.E. 2d 351 (1983).

*State v. Campbell,* 311 N.C. 386, 388-89, 317 S.E. 2d 391, 392 ·(1984).

Perhaps, by arguing that the jury should not concern itself with the technical requirements for the admission of real evidence, the prosecutor was urging the jury to concentrate not on the admissibility of the evidence, but rather on the weight it should be given. As defendant notes, it is impermissible for the prosecutor to argue that the jury shares its responsibility with the judge. *See, e.g., State v. Jones,* 296 N.C. 495, 251 S.E. 2d 425 (1979); *State v. White,* 286 N.C. 395, 211 S.E. 2d 445 (1975). Here, however, the prosecutor argued the opposite: that the judge determines admissibility, and the jury credibility. *Queen City Coach Co. v. Lee,* 218 N.C. 320, 11 S.E. 2d 341 (1940). This assignment of error is overruled.

[13]  Defendant's next assignment of error is that the prosecutor interjected his personal opinions and beliefs into the argument by commenting on the credibility of the witness Bill Call. Mr. Call testified that he took a Mexican male to the Johnson home. On that day, he told police that defendant was not that man. At trial, however, he testified only that he could not identify the defendant as that man. Defendant complains of the following argument by the prosecutor:

> I submit to you that those witnesses who testified on behalf of the State were telling you the truth and, yes, that includes the taxi driver, Mr. Call. He told you they all look alike to him, doesn't make any difference to him. The truth of the matter is, he didn't want to get involved. He didn't want to see anything. What he did see and what he tells you and what they expect you to believe is that a Mexican was taken to the front door of Calvin Johnson's and Mr. Call can say he was on the front porch going up to the front door when he was backing out.

We find nothing improper in this argument. There was ample testimony that defendant was in the area of the Johnson home on the morning in question. While Call testified that he could not identify the defendant as the man in his cab, he did testify that some Mexican male got a ride with him to the Johnson home. There was ample opportunity for the defendant to bring out on cross-examination the discrepancies between the testimony by Call and the other witnesses, as well as the discrepancy between Call's testimony and his own earlier statement. This assignment of error is overruled.

[14]  Defendant next complains that a particular portion of the prosecutor's argument tends to suggest that the defendant enjoyed killing his victim. Defendant did not object to this portion of the argument or make it the subject of an exception or assignment of error. Moreover, the evidence is clear that the defendant raped his victim and that the killing was accomplished as a part of the same violent transaction. It is not too speculative for the jury to infer that the defendant committed both acts with an intent to satisfy his desire. We overrule this assignment of error.

[15]  Defendant argues that the prosecutor "testified" to the jury concerning evidence not within the record:

I want to say to you now, you have seen everything the State has. If there had been any fingerprints, we would've showed you fingerprints. If there had been any fibers, we would've showed you fibers. If there had been any fingernail scrapings, we would have showed you fingernail scrapings. What you have before you is the evidence in the case of *State vs. Bernardino Zuniga.*

Defendant argues that this amounted to a prosecutorial apology for the weakness of the State's case. We disagree. A fair reading of the argument is that the prosecutor was anticipating a defense argument that there was insufficient evidence to put the defendant at the crime scene. Seen in this light, the argument was not improper.

[16] Defendant next complains of the following argument by the prosecutor:

[I]f you find him not guilty, of course, that speaks for itself, common sense tells you what that means, he's not guilty, we give him his knife back and let him go out and kill another little child.

Where a defendant does not object at trial to an allegedly improper jury argument, it is only reversible error for the trial judge not to intervene *ex mero motu* where the argument is so grossly improper as to be a denial of due process. *State v. Harris*, 308 N.C. 159, 301 S.E. 2d 91 (1983); *Darden v. Wainwright*, 477 U.S. 168, 91 L.Ed. 2d 144, *reh'g denied*, --- U.S. ---, 92 L.Ed. 2d 774 (1986). We agree that, taken out of context, this argument appears to be an improper suggestion that defendant, if acquitted, would commit a crime. Assuming, *arguendo*, that this argument was improper, our inquiry becomes whether the failure of the trial judge to intervene denied defendant a fair trial. We are not persuaded that the jury rendered a guilty verdict based upon a fear of defendant's future conduct rather than upon the overwhelming evidence of his guilt. The trial judge correctly instructed the jury on the legal standard it was to apply in determining guilt and upon the effect of the failure of the State to carry its burden of proving guilt beyond a reasonable doubt. We conclude that any impropriety in the prosecutor's argument or error in the trial judge's failure to intervene was cured by the subsequent instructions on the law.

[17]   At the end of the State's evidence, defendant moved to dismiss the charge of first-degree murder. This motion was renewed at the close of all evidence. Defendant argues that there was insufficient evidence to support the jury's finding that the defendant killed April Sweet with specific intent, after premeditation and deliberation.

In reviewing the sufficiency of the evidence needed to survive defendant's motion to dismiss, we are guided by several principles. The evidence is to be viewed in the light most favorable to the State. *State v. Thomas*, 296 N.C. 236, 250 S.E. 2d 204 (1978). All contradictions in the evidence are to be resolved in the State's favor. *State v. Brown*, 310 N.C. 563, 313 S.E. 2d 585 (1984). All reasonable inferences based upon the evidence are to be indulged in. *Id*. . . . [W]hile the State may base its case on circumstantial evidence requiring the jury to infer elements of the crime, that evidence must be real and substantial and not merely speculative. Substantial evidence is evidence from which a rational trier of fact could find the fact to be proved beyond a reasonable doubt. *State v. Pridgen*, 313 N.C. 80, 326 S.E. 2d 618 (1985); *State v. Jones*, 303 N.C. 500, 279 S.E. 2d 835 (1981).

*State v. Reese*, 319 N.C. 110, 138-39, 353 S.E. 2d 352, 368 (1987).

Defendant correctly notes that in order to convict him of premeditated and deliberate murder, the jury must have found beyond a reasonable doubt that defendant not only intended the killing, but formed that intent after premeditation and deliberation. *State v. Rogers*, 316 N.C. 203, 341 S.E. 2d 713 (1986); *State v. Brown*, 315 N.C. 40, 337 S.E. 2d 808 (1985), *cert. denied*, 476 U.S. 1165, 90 L.Ed. 2d 733 (1986). While the intentional use of a deadly weapon may, in and of itself, give rise to a presumption that a killing was malicious, *State v. Kirkley*, 308 N.C. 196, 302 S.E. 2d 144, this is insufficient to sustain a finding of premeditation or deliberation, *State v. Bullard*, 312 N.C. 129, 322 S.E. 2d 370; *State v. Lang*, 309 N.C. 512, 308 S.E. 2d 317 (1983). Defendant argues that he was convicted of premeditated and deliberate murder upon insufficient evidence, and therefore the State was unconstitutionally relieved of its burden of proving every element of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 61 L.Ed. 2d 560, *reh'g denied*, 444 U.S. 890, 62 L.Ed. 2d 126 (1979).

In *State v. Myers*, 309 N.C. 78, 305 S.E. 2d 506 (1983), we considered the problem presented by proving premeditation and deliberation in the absence of direct evidence. We had previously held that circumstantial evidence may be used to show premeditation and deliberation. *See, e.g., State v. Corn*, 303 N.C. 293, 278 S.E. 2d 221 (1981); *State v. Walker*, 173 N.C. 780, 92 S.E. 327 (1919). In *Myers*, we set out some of the circumstances that may be used by a jury to infer premeditation and deliberation:

> Among the circumstances which may be considered as tending to show premeditation and deliberation are: (1) the want of provocation on the part of the victim, (2) the defendant's conduct and statements before and after the killing, (3) threats made against the victim by the defendant, (4) ill will or previous difficulty between the parties, (5) evidence that the killing was done in a brutal manner.

*Myers*, 309 N.C. at 84, 305 S.E. 2d at 510.

The State argues that there was sufficient evidence from which the jury could properly have inferred premeditation and deliberation. We agree. Dr. Butts testified that the killing was accomplished by a person stabbing April through the neck, partially removing the knife, and then plunging it home again. Given the manner of the killing, the age of the victim, her prior relationship with the defendant, the disparity in their sizes, and the fact that hair was torn from the victim's scalp, the jury was entitled to believe that the defendant premeditated and deliberated, for some period of time, the killing of April Sweet.

[18] Defendant next argues that the trial court erred in denying his motion to dismiss the charge of first-degree rape. We disagree. Defendant was indicted for the first-degree rape of April Sweet under the theory that she was twelve years old or less and defendant was more than four years older. At trial, the evidence showed that April had been penetrated by a human penis, that she was seven years old when the intercourse occurred, and that defendant was twenty-seven years old. Defendant's motion to dismiss the charge of first-degree rape was denied. The trial judge instructed the jury that it would convict if it found that the defendant engaged in sexual intercourse with April Sweet, that she was twelve years old or less when the intercourse occurred, and that defendant was at least twelve years old

and at least four years older than April when the intercourse took place. The jury returned a verdict of guilty of first-degree rape.

Defendant's contention is that the evidence was insufficient to show that April was alive when she was penetrated. Defendant argues that such a showing is necessary in order to convict defendant of first-degree rape. *See Commonwealth v. Sudler*, 496 Pa. 295, 436 A. 2d 1376 (1981). Defendant reasons that it is the assaultive nature of the rape, rather than the fact of intercourse, that is "[t]he essence of the crime [of rape]." *State v. Barefoot*, 241 N.C. 650, 86 S.E. 2d 424 (1955).

While it may be true that the "essence" of forcible rape is the assault, there is no requirement that the rape of a child be assaultive in character. It is well established that even consensual intercourse with a child less than twelve years old, where the defendant is four years or more older, is first-degree rape. *State v. Temple*, 269 N.C. 57, 152 S.E. 2d 206 (1967). Thus, we are not faced here with the question of whether a forcible rape may be committed against a corpse. *See State v. Powell*, 299 N.C. 95, 261 S.E. 2d 114 (1980). Moreover, the evidence of the blood on the victim's legs and on defendant's shorts was sufficient to permit the jury to have inferred that the victim was alive at the time she was raped. This assignment of error is overruled.

[19] Defendant next assigns as error the failure of the trial judge to instruct on second-degree murder. He contends that because the evidence of premeditation and deliberation was "equivocal," he was entitled to an instruction on second-degree murder as a lesser included offense of first-degree murder. *State v. Strickland*, 307 N.C. 274, 298 S.E. 2d 645 (1983). We disagree.

A plea of not guilty to first-degree murder does not, by itself, entitle a defendant to an instruction on second-degree murder. *State v. Williams*, 314 N.C. 337, 333 S.E. 2d 708 (1985). Only where defendant has brought forth evidence to negate the element of premeditation and deliberation, or where the evidence is equivocal as to premeditation and deliberation, is defendant entitled to an instruction on second-degree murder.[6] *Id. See also*

---

6. The State argues that because the defendant could also have been convicted of first-degree murder under the felony murder rule, any error in not submitting

*State v. Strickland*, 307 N.C. 274, 298 S.E. 2d 645 (1983); *Beck v. Alabama*, 447 U.S. 625, 65 L.Ed. 2d 392 (1980).

We find that the evidence in this case compels the conclusion that the defendant premeditated and deliberated the killing. There is no suggestion that the seven-year-old victim provoked the stabbing or that the stabbing was otherwise the product of a suddenly aroused passion. *See State v. Fields*, 315 N.C. 191, 337 S.E. 2d 518 (1985). Rather, the evidence shows a stabbing in April's neck leaving two exit wounds; a stabbing that could have been the result of a sawing motion intended to sever one of the major blood vessels in the neck. Defendant argued that he was not the person who stabbed April, not that the stabbing was not a premeditated and deliberate act. Having generally denied his culpability and having brought forward or referred to no evidence to negate the strong inference that the killing was premeditated and deliberate, defendant was not entitled to an instruction on second-degree murder. *State v. Williams*, 314 N.C. 337, 333 S.E. 2d 708.

[20] Defendant next argues that the trial judge erred in the following instructions on premeditation and deliberation:

Fourth, the State must prove to you, beyond a reasonable doubt, the defendant acted out of premeditation, that is he formed the intent to kill her over some period of time, however short, before he stabbed her, if he did.

Fifth, that the defendant acted with deliberation. Which means that he acted while in a cool state of mind. This does not mean that there must be a total absence of passion or emotion. If the intent to kill was formed with a fixed purpose, not under the influence of any suddenly aroused pas-

second-degree murder was harmless beyond a reasonable doubt. *State v. Wall*, 304 N.C. 609, 286 S.E. 2d 68 (1982). The trial judge instructed the jury that it would consider felony murder only if it found defendant not guilty of premeditated and deliberate murder. Therefore, while the evidence may have supported a conviction of felony murder, the jury did not render a verdict on this theory. Moreover, the rape was the sole aggravating factor submitted to the jury during the sentencing hearing. That factor could not have been submitted unless the jury found that the defendant premeditated and deliberated the killing. *State v. Williams*, 308 N.C. 47, 301 S.E. 2d 335, *cert. denied*, 464 U.S. 865, 78 L.Ed. 2d 177 (1983); *State v. Silhan*, 302 N.C. 223, 275 S.E. 2d 450 (1981). If defendant had been entitled to an instruction on second-degree murder, we could not say that the erroneous refusal to so instruct was harmless beyond a reasonable doubt.

sion, it is immaterial that the defendant was in a state of passion or excited when the intent was carried out. Now, again, neither premeditation or deliberation are susceptible of direct proof. They may be proved by proof of circumstances from which they may be inferred. Such as the lack of provocation by a victim, the conduct of the defendant before, during or after a killing, use of excessive force, the brutal or vicious circumstances of the killing, if any, and the manner in which or the means by which a killing is done.

Defendant argues that there was insufficient evidence to support the instructions. While we have held that each factor utilized by the jury to infer premeditation and deliberation must be supported by competent evidence, *State v. Buchanan*, 287 N.C. 408, 215 S.E. 2d 80 (1975), the defendant does not specify in his brief which of the factors in the judge's instructions is not supported or in what other manner this instruction is erroneous. We overrule this assignment of error.

[21] Defendant next assigns as error the judge's instruction on the effect of a verdict of guilty of felony murder. The judge instructed on the elements of premeditated and deliberate murder. He then instructed that if the jury found the defendant not guilty of that offense, it would consider whether defendant was guilty of first-degree murder under the felony murder rule. After setting out the elements of this offense, the judge added:

Now, if you find that he is guilty of that offense, that is first degree committed during a rape, you would not consider the rape charge. The reason for that very simply is in that event, the murder and rape merge into one case, but if you do not find him guilty of that offense, you would, of course, find him not guilty.

Defendant argues that the jury wanted to make sure that the defendant was punished for the rape, as well as for the killing, and that the jury mistakenly believed that if it did not find the defendant guilty of premeditated and deliberate murder, the rape would go unpunished. The defendant argues that the jury was encouraged by this instruction to return a result-oriented verdict. *State v. Hammonds*, 290 N.C. 1, 224 S.E. 2d 595 (1976).

We see no error in the judge's instructions. It is a correct statement of the merger principle. *See State v. Silhan*, 302 N.C.

223, 275 S.E. 2d 450 (1981). We note that, elsewhere in his instructions, the judge instructed that the jury could find defendant guilty of rape, notwithstanding a verdict of not guilty of murder.

Even if the instruction was erroneous, it was not plain error. *State v. Odom*, 307 N.C. 655, 300 S.E. 2d 375 (1983). Because this instruction was not objected to at trial, the proper test is whether the alleged error had a probable impact on the verdict. *State v. Sams*, 317 N.C. 230, 345 S.E. 2d 179 (1986). The jury returned a verdict of guilty on the theory of premeditated and deliberate murder. We have already held that there was sufficient evidence to support that verdict. There is nothing to suggest that the verdict was in fact based upon anything other than the evidence. This assignment of error is overruled.

## IV. SENTENCING

The trial judge submitted to the jury one aggravating factor (i.e., "Was this murder committed while Bernardina [sic] Zuniga was engaged in the commission of the felony of first degree rape?") and the following twelve mitigating factors:

1. That the defendant, Bernardino Zuniga, has no significant history of prior criminal activity?

. . . .

2. That the age of the defendant[,] Bernardino Zuniga, at the time of this murder is a mitigating circumstance?

. . . .

3. That the defendant, Bernardino Zuniga, has been a good worker at various times prior to July 13, 1982?

. . . .

4. That the defendant, Bernardino Zuniga, has suffered severe medical problems in the form of Pulmonary Tuberculosis of the left lung with secondary pleurisy, granaloma [sic] adjacent to dorsal spine with radicular pain into the 8th intercostal nerve, actue [sic] bilateral pneumonia and emaciation secondary to Tuberculosis with chronic malnutrition, and which resulted in the defendant's hospitalization for an extended period of time?

. . . .

5. That the defendant, Bernardino Zuniga, has not been a disciplinary problem and has cooperated with prison personnel in Central Prison?

. . . .

6. That the defendant, Bernardino Zuniga, cooperated with Lieutenant Larry Elder of the Alexander County Sheriff's Department on July 13, 1982?

. . . .

7. That the defendant, Bernardino Zuniga[,] cooperated with the officers of the Alexander County Sheriff's Department and with the officers of the State Bureau of Investigation in the obtaining of evidence from him on July 19, 1982?

. . . .

8. That the defendant, Bernardino Zuniga, waived extradition to the State of North Carolina and accompanied officers back to North Carolina?

. . . .

9. That after his arrest in Knoxville, Tennessee, the defendant, Bernardino Zuniga, cooperated with officers of the Knoxville, Tennessee Police Department on July 13, 1982 and July 14, 1982?

. . . .

10. That the defendant, Bernardino Zuniga, has no prior conviction of sexual offense?

. . . .

11. That since the arrest of the defendant, Bernardino Zuniga, he has shown no tendencies of violence against others?

. . . .

12. Any other circumstance or circumstances arising from the evidence which you the jury deem to have mitigating value?

[22] Defendant assigns as error the failure of the trial judge to submit two additional nonstatutory mitigating factors: (1) that the defendant had no history of violence or violent acts and (2) that the defendant was raped while in prison.

Defendant argues that he was entitled to have the jury consider any factor that may have mitigating value. *Skipper v. South Carolina*, 476 U.S. 1, 90 L.Ed. 2d 1 (1986). While this is the general rule, it is not reversible error per se for the trial judge to withhold an instruction on a proffered mitigating factor. *State v. Pinch*, 306 N.C. 1, 292 S.E. 2d 203, *cert. denied*, 459 U.S. 1056, 74 L.Ed. 2d 622 (1982). In *Pinch*, we said:

> The sum of the matter is this—a defendant demonstrates reversible error in the trial court's omission or restriction of a statutory or timely requested mitigating circumstance in a capital case only if he affirmatively establishes three things: (1) that the particular factor was one which the jury could have reasonably deemed to have mitigating value (this is presumed to be so when the factor is listed in G.S. 15A-2000(f)); (2) that there was sufficient evidence of the existence of the factor; and (3) that, considering the case as a whole, the exclusion of the factor from the jury's consideration resulted in ascertainable prejudice to the defendant.

*Pinch*, 306 N.C. at 27, 292 S.E. 2d at 223-24.

Applying these principles to the mitigating circumstances requested by the defendant, we find first that a defendant's history of nonviolence may have mitigating value. The first part of the *Pinch* test is therefore met as to this factor. However, the fact that defendant was raped while in prison subsequent to the crime charged does not have mitigating value as to that crime. Thus, the trial judge properly refused to submit as a mitigating factor that the defendant had been raped in prison.

The second part of the *Pinch* test requires an examination of the sufficiency of the evidence to support the factor proffered. As to the defendant's alleged history of nonviolence, defendant argues that he was entitled to have the jury consider this factor because his criminal record showed only that he had been convicted twice of illegal entry into this country. Because this prof-

fered factor fails on the third prong of the *Pinch* test, however, we need not decide whether defendant presented sufficient evidence of this mitigating circumstance.

The third prong of the *Pinch* test is a consideration of any prejudice borne by defendant due to a mitigating factor not being submitted to the jury. The jury declined to find that the defendant had no significant history of prior criminal activity, found that the defendant had no prior conviction of sexual offense, and found that defendant had shown no violent tendencies since his arrest. It appears that the jury was cognizant of the defendant's past and that he had at least some tendency for nonviolence when it weighed the mitigating circumstances and the aggravating factor. Therefore, the mitigating value that the defendant argues he was erroneously denied was found in the factors already submitted to the jury. The jury found seven of twelve mitigating factors presented and nonetheless returned a recommendation of death. We cannot say on this record that the jury probably would have reached a different result if the additional mitigating circumstances were submitted. *State v. Pinch*, 306 N.C. 1, 292 S.E. 2d 203.

[23] Defendant next argues that the trial judge erred in the following ruling made during the defendant's closing argument at the sentencing hearing:

> It's a unanimous decision, all twelve of you must make that decision and if you are not totally convinced, and I'm talking individually, you should have the courage in your convictions to stand firm, regardless of pressure, what you think the community expects—
>
> MR. ZIMMERMAN: OBJECT, it's the duty of the jury to reason together.
>
> COURT: SUSTAINED, you will listen to each element. Proceed.

(Emphasis added.)

Defendant does not argue that the judge's ruling sustaining the objection is error. Rather, defendant argues that the underlined language left the jury with the erroneous impression that community expectation is a proper "element" for its considera-

tion. Defendant did not request at trial that the court instruct the jury that community pressure is not an element of the sentencing consideration. Moreover, defendant continued to argue, without objection, that each juror must individually agree with the verdict. Finally, the trial judge correctly instructed the jury in his charge that it was its duty to determine the sentencing recommendation based solely upon the existence of mitigating and aggravating factors, which in turn must be based upon the evidence presented in the courtroom. Defendant has failed to demonstrate error in this regard.

[24] Defendant next complains of the following argument by the prosecutor:

> The Court, in its infinite wisdom has seen fit not to submit cruel, heinous and atrocious. As Old Judge Olive said, hanging up there on the wall, the Court is presumed to know what the law is, and the State agrees with that.

Defendant contends that this argument improperly urged the jury to apply an aggravating factor that was not submitted to it by the judge. We note first that the prosecutor had forecast to the jury that the State would rely on this factor in sentencing. It appears therefore that the prosecutor was attempting to explain to the jury why the factor was no longer proper for its consideration. Even assuming that this was an improper attempt to put before the jury a factor that the trial court had found not to be supported by the evidence, we do not agree that it constituted reversible error. *See State v. Irwin*, 304 N.C. 93, 282 S.E. 2d 439 (1981). Because the defendant did not object at trial, the proper test is whether the argument was so improper as to have required the trial judge to intervene *ex mero motu. State v. Johnson*, 298 N.C. 355, 259 S.E. 2d 752 (1979). We cannot conclude that this passing reference to the aggravating factor rose to the level of gross impropriety. Moreover, in light of the trial court's instructions that there was only one aggravating factor to be considered by the jury, it appears that the defendant was not prejudiced by this comment.

[25] Defendant next complains of the following argument by the district attorney:

> You are not killing him. The law sentences him to die. The law does and there's nowhere in this Bible right here (in-

State v. Zuniga

dicating), not any place in this Bible is there any condemnation of the death penalty.

"Romans 13, let every soul be subject of a higher power for there is no power but of God. The powers that be are ordained of God. Whosoever resisteth the power, resisteth the ordinance of God and they that resist shall receive to themselves damnation.

For rulers are not a terror to good works, but to evil. Wilt thou then not be afraid of the power. Do that which is good, and thou shalt have praise of the same. For he is the minister of God to thee for good. But if thou do that which is evil, be afraid, for he beareth not the sword in vain, for he is the minister of God, and revenger to execute wrath upon him that doeth evil."

And, I say that comes after the phrase, "Vengeance is mine sayeth the Lord."

Defendant argues that a similar argument was disapproved by a federal court. *See Miller v. North Carolina*, 583 F. 2d 701 (4th Cir. 1978). Defendant does not specify what right under either state or federal law was allegedly infringed by this argument. While we have also disapproved of this argument, *State v. Moose*, 310 N.C. 482, 313 S.E. 2d 507 (1984), we are not persuaded that defendant was prejudiced in this case by this reference to the scriptures. Defense counsel also made references to the scriptures in his arguments. We cannot say that the trial judge abused his discretion in not intervening *ex mero motu* when the prosecutor did so. This assignment of error is overruled.

[26]    Defendant next takes exception to the following argument:

You heard about a little snaggled [sic] tooth seven year old girl . . . . Justice is making sure that Bernardino Zuniga is not ever going to do this again.

. . . .

We talked the other day about emotions and about this case. Yes sir, there's emotion. Just like common sense, by grannies, it's a little girl and that's what makes it so bad. It wouldn't make any difference in alot [sic] of ways if she'd been grown, it's a violation of the law just the same, but your

heart goes out to a child, as it should. You just say to your-
self, "What am I going to do with this punishment. How am I
going to be satisfied in my mind that he won't ever do it
again?"

. . . .

Think about what she asked him. Reckon she said,
"Please don't hurt me."

Reckon she begged a little bit. . . . Then it's almost a
farce for us to have to sit here in this courtroom.

Defendant argues that the prosecutor appealed to the jury to
sentence defendant to death as a deterrent to his killing again. In
*State v. Kirkley*, 308 N.C. 196, 215, 302 S.E. 2d 144, 155, the pros-
ecutor argued, "I'm asking you to impose the death penalty as a
deterrent, to set a standard of conduct." We held the argument
improper, although not so improper as to have required the judge
to intervene *ex mero motu.*

*Kirkley* stands for the proposition that neither the defendant
nor the State can introduce evidence or argue the effect, if any, of
the death penalty on the commission of crimes by others. The
argument complained of here, however, was not that the death
penalty would have a general deterrent effect on crime, but
rather that the execution of Bernardino Zuniga would foreclose
further commission of crimes by him. We have upheld arguments
invoking specific deterrence. *State v. Johnson*, 298 N.C. 355, 259
S.E. 2d 752. *See also Darden v. Wainwright*, 477 U.S. 168, 180
n.10, 91 L.Ed. 2d 144, 157 n.10 ("that's the only way I know that
he is not going to get out on the public"). This assignment of er-
ror is overruled.

Defendant next argues that the prosecutor's sentencing
phase closing argument, taken as a whole, denied defendant a fun-
damentally fair sentencing determination in violation of his eighth
amendment rights. *Caldwell v. Mississippi*, 472 U.S. 320, 86 L.Ed.
2d 231. We have carefully reviewed the argument of the district
attorney and defendant's contention with regard thereto and find
that the final argument was not so improper as to suggest that it
caused the jury to act out of passion or prejudice.

[27]   Defendant assigns as error the refusal of the trial judge to give the following instructions during the penalty phase of his trial:

"The Defendant has been previously convicted of one count of premeditated and deliberated murder. Premeditated and deliberated murder is the most aggravated of the criminal offenses defined by our law. In spite of that, death is not the appropriate penalty for all cases of conviction for this offense. It is only in the particularly aggravated cases of conviction for premeditated and deliberated murder that death may be imposed as the punishment. For the typical case of conviction for premeditated and deliberated murder, the appropriate penalty is imprisonment of the Defendant for the balance of his natural life.

"Of course there is no 'typical case' of premeditated and deliberated murder. Each case involves a peculiar set of facts which relate to the nature of the offense. Each Defendant has a peculiar set of facts which make up his background and character. But when weighing any aggravated circumstance you may find and when determining whether such aggravating circumstance is sufficient, in light of the mitigating circumstances, to call for the imposition of the death penalty, it is important that you keep in mind that the proper sentence for the norm of cases of premeditated and deliberated murder is imprisonment for life."

. . . .

"Some of the matters you will be called upon to decide in the course of your deliberations and in your answers to the questions on the Issues and Recommendation Form are objective and others are subjective. With respect to the objective matters, you are called upon to decide whether certain facts have been proven to exist much as you would be called upon to decide facts in an ordinary civil or criminal case. Among these objective questions are whether the State has proven beyond a reasonable doubt that the aggravating circumstance submitted to you exists and whether the Defendant has proven by a preponderance of the evidence that the mitigating circumstances submitted to you exist. Among the subjective questions are (1) whether some of the mitigating

circumstances, those which I will instruct you are non-statutory mitigating circumstances, have mitigating value, (2) how you weigh the mitigating factors against the aggravating factors, and (3) whether any aggravating factor you find, considered in light of the mitigating factors you find, is sufficiently substantial to call for the punishment of death."

. . . .

"There are two categories of mitigating circumstances: Those mitigating circumstances which our legislature has determined to be, as a matter of law, in mitigation of punishment in every case if proven and those which may be mitigating circumstances in individual cases.

"As to those mitigating circumstances that our legislature has determined are by law in mitigation of punishment, those circumstances are referred to as statutory mitigating circumstances. I instruct you that as to the statutory mitigating circumstances you must consider these factors in the Defendant's favor in mitigating against the death penalty and give them weight in your determination of whether the mitigating circumstances outweigh the aggravating circumstance. This is true even though you may disagree with the legislature that these factors should be considered in the Defendant's favor in mitigating against the death penalty.

"The other group of mitigating circumstances are referred to as non-statutory mitigating circumstances. As to these mitigating circumstances, you must first determine whether that circumstance has been proven by the Defendant. Second, you must determine whether it has mitigating value and should be considered in the Defendant's favor in mitigating against the death penalty. If you find both that the factor has been proven and that it has mitigating value, then you must give it weight in your determination of whether the mitigating circumstances outweigh the aggravating circumstance."

. . . .

"The mitigating effect of the age of the Defendant is for you to determine from all the facts and circumstances which

you find from the evidence. In determining whether this factor exists in this case, you are instructed that 'age' as it is used under the law is not restricted to chronological age. 'Age' includes the Defendant's mental or emotional age, his maturity or his lack of maturity at the time of the crime."

Defendant argues that because each of these instructions would have put before the jury considerations that would have improved his chances for a life sentence rather than the death penalty, the instructions had mitigating value and were his right under *Skipper v. South Carolina*, 476 U.S. 1, 90 L.Ed. 2d 1.

Defendant's proposed instructions concern (1) the nature of mitigation, (2) the life sentence as the norm for first-degree murders, and (3) the meaning of the "age" mitigating factor. We have examined the requested instructions and concluded that defendant was not prejudiced by the refusal of Judge Hobgood to give them.

The instruction on the nature of mitigation given by Judge Hobgood has already been approved by this Court. *State v. McDougall*, 308 N.C. 1, 301 S.E. 2d 308, *cert. denied*, 464 U.S. 865, 78 L.Ed. 2d 173 (1983). We have not been persuaded to withdraw our approval in this case.

The instruction that the life sentence is the norm in first-degree murder cases would encourage the jury not to give the individualized consideration to the sentence that the constitution requires.[7] *Woodson v. North Carolina*, 428 U.S. 280, 49 L.Ed. 2d 944 (1976). Moreover, we find that the trial judge's instructions adequately apprised the jury that if it did not find that the aggravating factor outweighed the mitigating factors, it would return a recommendation of life imprisonment. This assignment of error is overruled.

By requesting an instruction that the "age" mitigating circumstance may include mental as well as chronological age, the defendant was apparently arguing that the defendant's mental age was below his chronological age of twenty-seven years.

---

7. The State cites *State v. Taylor*, 280 N.C. 273, 185 S.E. 2d 677 (1972), a case where we disapproved of such an instruction. *Taylor* was a case decided before the enactment of the Capital Sentencing Act and does not control our decision in this case.

However, we find no evidence in the record to support such an instruction and thus nothing which would entitle defendant to the submission of this factor.

Defendant argues that the jury's recommendation of the death penalty was made out of passion or prejudice or, alternatively, that the sentence is disproportionate to the crime for which he stands convicted. We have reviewed the sentence in this case according to the statutory requirements found in N.C.G.S. § 15A-2000(d) and find that there was sufficient evidence before the jury to support its sentencing recommendation. We therefore affirm the entry of the death sentence against defendant.

[28] Defendant contends that the jury was persuaded by the prosecutor to recommend the death penalty because the victim was very young. The prosecutor may not argue an aggravating factor not supported by the evidence or not included in the statutory list of aggravating factors found in N.C.G.S. § 15A-2000(e).[8] *State v. Brown*, 306 N.C. 151, 293 S.E. 2d 569, *cert. denied*, 459 U.S. 1080, 74 L.Ed. 2d 642 (1982). Likewise, a jury may not base its sentencing recommendation on an improper aggravating factor. *State v. Cherry*, 298 N.C. 86, 257 S.E. 2d 551 (1979), *cert. denied*, 446 U.S. 941, 64 L.Ed. 2d 796 (1980). Where there is evidence to support the aggravating factors relied upon by the State, however, the jury's balancing of aggravation and mitigation will not be disturbed unless it appears that the jury acted out of passion or prejudice or made its sentence arbitrarily. *See State v. Williams*, 305 N.C. 656, 292 S.E. 2d 243, *cert. denied*, 459 U.S. 1056, 74 L.Ed. 2d 622 (1982), *reh'g denied*, 459 U.S. 1189, 74 L.Ed. 2d 1031 (1983).

In this case, there was plenary evidence to support the jury's finding of the aggravating factor that the killing was accomplished during the commission of the rape of April Sweet. While the prosecutor did make several references to the age of April Sweet, each juror said on voir dire that he or she would not be influenced by the age of the victim. Defendant has failed to show that the jury made its recommendation based upon passion or

8. The Fair Sentencing Act does contain an aggravating factor that allows the judge to sentence a defendant to a sentence beyond the presumptive where the victim is very young, very old, or infirm. N.C.G.S. § 15A-1340.4(a)(1) (1986). No comparable aggravating factor is contained in the Capital Sentencing Act.

prejudice, rather than upon the finding of an aggravating factor that outweighs the factors in mitigation.

[29] Defendant argues that the death sentence is disproportionate in this case. We have reviewed the sentence in this case in light of the cases in the proportionality pool and conclude that the death penalty is not disproportionate to the crime of which the defendant stands convicted.

In *State v. Lawson*, 310 N.C. 632, 314 S.E. 2d 493 (1984), *cert. denied*, 471 U.S. 1120, 86 L.Ed. 2d 267 (1985), we described the process of proportionality review:

> In essence, our task on proportionality review is to compare the case at bar with other cases in the pool which are roughly similar with regard to the crime and the defendant, such as, for example, the manner in which the crime was committed and defendant's character, background, and physical and mental condition. If, after making such a comparison, we find that juries have consistently been returning death sentences in the similar cases, then we will have a strong basis for concluding that a death sentence in the case under review is not excessive or disproportionate. On the other hand if we find that juries have consistently been returning life sentences in the similar cases, we will have a strong basis for concluding that a death sentence in the case under review is excessive or disproportionate.

*Id.* at 648, 314 S.E. 2d at 503. The only aggravating factor submitted to the jury was, "Was this murder committed while Bernardina [sic] Zuniga was engaged in the commission of the felony of first degree rape?" Defendant argues that we have never affirmed a death penalty where only the single aggravating factor of an accompanying felony was submitted to the jury. While this may be true, a single aggravating factor may outweigh a number of mitigating factors and may be sufficient to support a death sentence. *See State v. Gladden*, 315 N.C. 398, 340 S.E. 2d 673, *cert. denied*, --- U.S. ---, 93 L.Ed. 2d 166 (1986); *State v. Huffstetler*, 312 N.C. 92, 322 S.E. 2d 110 (1984), *cert. denied*, 471 U.S. 1009, 85 L.Ed. 2d 169 (1985); *State v. Noland*, 312 N.C. 1, 320 S.E. 2d 642 (1984), *cert. denied*, 469 U.S. 1230, 84 L.Ed. 2d 369 (1985).

We think that this case is similar to other cases of murder and sexual assault. Of the cases in the proportionality pool involv-

ing both a rape and other sexual assault and a homicide, five have carried the death penalty[9] and three have carried a life sentence.[10] It is not, therefore, unusual for the jury to recommend death in a case of rape and murder.

Defendant notes that the "especially heinous, atrocious, or cruel" factor, N.C.G.S. § 15A-2000(e) (1986), was not submitted to the jury in his case and that most affirmed death penalty cases have involved this factor. He argues that the brutality of this crime cannot be used to compare this crime to other crimes in the pool where the especially heinous, atrocious, or cruel factor was found by the jury. We disagree.

While the brutality of the *killing* was not submitted to the jury during its sentencing deliberations, the jury could still have considered the brutality of the *rape* as giving greater weight to the sole aggravating factor properly under its consideration. Likewise, the jury could properly have found that the age of the victim of the rape gave added weight to the factor submitted.[11] Thus, while the age of the victim could not be submitted as an aggravating factor for the murder, the age of the victim may properly be considered in weighing the aggravating factor that the killing was accomplished during the commission of a rape. Given

---

9. *State v. Vereen*, 312 N.C. 499, 324 S.E. 2d 250, *cert. denied*, 471 U.S. 1094, 85 L.Ed. 2d 526 (1985); *State v. McDougall*, 308 N.C. 1, 301 S.E. 2d 308, *cert. denied*, 464 U.S. 865, 78 L.Ed. 2d 173 (1983); *State v. Smith*, 305 N.C. 691, 292 S.E. 2d 264, *cert. denied*, 459 U.S. 1056, 74 L.Ed. 2d 622 (1982); *State v. Rook*, 304 N.C. 201, 283 S.E. 2d 732 (1981), *cert. denied*, 455 U.S. 1038, 72 L.Ed. 2d 155 (1982); *State v. Williams*, 308 N.C. 47, 301 S.E. 2d 335, *cert. denied*, 464 U.S. 865, 78 L.Ed. 2d 177 (1983).

10. *State v. Fincher*, 309 N.C. 1, 305 S.E. 2d 685 (1983); *State v. Clark*, 300 N.C. 116, 265 S.E. 2d 204 (1980); *State v. Powell*, 299 N.C. 95, 261 S.E. 2d 114 (1979).

11. Our criminal law has long reflected the societal belief that child-victims should be afforded special protection. *See, e.g.*, N.C.G.S. § 14-41 (1986) (abduction of children); N.C.G.S. §§ 14-190.7, -190.8 (1986) (dissemination of obscene materials to minors); N.C.G.S. § 14-190.18 (1986) (promoting prostitution of a minor); N.C.G.S. § 14-318.2 (1986) (child abuse); N.C.G.S. § 14-322 (1986) (abandonment and nonsupport). Our statutes also reflect the societal belief that the rape of a child is more egregious than the rape of an adult. *See* N.C.G.S. § 14-27 (1986).

We note finally that in two cases, murderers of children have been sentenced to death. *See State v. Brown*, 306 N.C. 151, 293 S.E. 2d 569, *cert. denied*, 459 U.S. 1080, 74 L.Ed. 2d 642 (1982); *State v. McDowell*, 301 N.C. 279, 271 S.E. 2d 286 (1980), *cert. denied*, 450 U.S. 1025, 68 L.Ed. 2d 220 (1981).

the savagery of the attack on this defenseless child, the enormous suffering that she apparently suffered, and the relative significance of the mitigating factors brought forth by the defendant, we cannot say that the death penalty recommendation in this case was excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. We hold therefore that the sentence in this case is not disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

We hold that the defendant received a trial and sentencing hearing free of prejudicial error, that the jury did not sentence out of passion or prejudice, and that the sentence is not disproportionate.

No error.